**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In re: Administrative Subpoenas to Children's Hospitals | Case No. 1:26-cv-1834 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION, MOTION TO QUASH REQUESTS 11–13, AND
FOR A PRELIMINARY INJUNCTION ENJOINING DOJ FROM SEEKING
COMPLIANCE WITH OR ENFORCING SUBPOENA REQUESTS 11–13**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

I.      DOJ's Nationwide Campaign to End Pediatric Transgender Care ................................... 3

II.     DOJ Issued Substantively Identical Subpoenas ................................................................. 4

III.    DOJ Expands Enforcement Efforts...................................................................................... 7

ARGUMENT ..................................................................................................................... 9

I.      Class Certification Is Appropriate to Challenge Substantively Identical Subpoena
        Requests Emanating from a Single Investigation ................................................................ 9

        A.      Class Definition ...................................................................................................... 10

        B.      Movants Readily Satisfy Rule 23 ........................................................................... 11

        C.      Rule 23(b)(2) Certification Is Tailored to the Relief Required............................... 15

II.     Requests 11–13 Should Be Quashed as to All Class Members ......................................... 17

        A.      Rule 45 Authorizes Class-wide Quashal................................................................. 18

        B.      As in *CNH,* Requests 11–13 Fail Multiple *Bailey* Prongs ................................... 20

        C.      Compelled Disclosure Violates Minors' Constitutional Privacy and Imposes
                Undue Rule 45 Burdens .......................................................................................... 23

III.    While Briefing on the Above Motions Are Underway, This Court Should
        Conditionally Certify the Proposed Class and Enter a Preliminary Injunction to
        Preserve the Status Quo .................................................................................................... 24

        A.      Each Component of the Requested Relief Is Necessary.......................................... 28

REQUESTED RELIEF...................................................................................................... 29

CONCLUSION................................................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)......................................................................................................... 11, 13

*Boe v. Children's Hosp. Colo.*,
No. 2026-cv-30291 (D. Denver Dist. Ct. Jan. 20, 2026)........................................................ 11

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) ................................................................................................ 13

*CASA, Inc. v. Trump*,
793 F. Supp. 3d 703 (D. Md. 2025)....................................................................................... 14

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992).................................................................................................................. 29

*Deiter v. Microsoft Corp.*,
436 F.3d 461 (4th Cir. 2006) ................................................................................................ 13

*Doe v. Broderick*,
225 F.3d 440 (4th Cir. 2000) ................................................................................................ 23

*Doe v. Luzerne Cnty.*,
660 F.3d 169 (3d Cir. 2011) ................................................................................................. 23

*Doe v. Se. Pa. Transp. Auth.*,
72 F.3d 1133 (3d Cir. 1995) ................................................................................................. 23

*EQT Prod. Co. v. Adair,*
764 F.3d 347 (4th Cir. 2014) .......................................................................................... 11, 15

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982).............................................................................................................. 13

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) ................................................................................................ 14

*Hammond v. Powell,*
462 F.2d 1053 (4th Cir.1972) ............................................................................................... 15

*Hansberry v. Lee*,
311 U.S. 32 (1940)................................................................................................................ 13

*In re 2025 Children's Hosp. of L.A. Subpoena*,
No. 2:25-cv-11183 (C.D. Cal. Jan. 22, 2026)........................................................................ 22

*In re 2025 Subpoena to Children's Nat'l Hosp.*,
   No. 1:25-cv-03780, 2026 WL 160792 (D. Md. Jan. 21, 2026) ........................................ *passim*

*In re 2025 Subpoena to R.I. Hosp.*, (May 7, 2026) ......................................................................... 5

*In re Admin. Subpoena 25-1431-032*,
   No. 4:26-mc-00006 (N.D. Tex. Apr. 30, 2026) ................................................................... 1, 2, 8

*In re Admin. Subpoena No. 25-1431-019*,
   1:25-mc-91324 (D. Mass.) .................................................................................................. 5, 12

*In re Admin. Subpoena No. 25-1431-019*,
   800 F. Supp. 3d 229 (D. Mass. 2025) ................................................................................ 6, 22

*In re Banc of Cal. Sec. Litig.*,
   326 F.R.D. 640 (C.D. Cal. 2018) ............................................................................................ 11

*In re Dep't of Just. Admin. Subpoena No. 25-1431-030*,
   Misc. No. 25-mc-00063 (D. Colo.) ...................................................................................... 5, 6

*In re Grand Jury Subpoena*,
   829 F.2d 1291, 1297 (4th Cir. 1987) ....................................................................................... 9

*In re Subpoena No. 25-1431-016*,
   No. 2:25-cv-00041, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025) .............................. 5, 6, 12

*In re Subpoena No. 25-1431-014*,
   810 F. Supp. 3d 555 (E.D. Pa. 2025) .............................................................. 6, 13, 22, 25, 27

*In re Subpoena No. 25-1431-014*,
   No. 2:25-mc-00039 (E.D. Pa.) ............................................................................................. 5, 9

*In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC*,
   148 F.4th 1056 (9th Cir. 2025) ............................................................................................... 19

*In re: 2025 UPMC Subpoena*,
   No. 2:25-mc-01069 (W.D. Pa.) ........................................................................................ 5, 6, 22

*In Re: Admin. Subpoena 25-1431-032*,
   No. 4:26-mc-00006 (N.D. Tex. Apr. 30, 2026) ........................................... 1, 2, 5, 8, 17, 26

*J.D. v. Azar*,
   925 F.3d 1291 (D.C. Cir. 2019) .............................................................................................. 10

*J.O.P. v. U.S. Dep't of Homeland Sec.*,
   409 F. Supp. 3d 367 (D. Md. 2019) ........................................................................................ 28

*Krakauer v. Dish Network, L.L.C.*,
   925 F.3d 643 (4th Cir. 2019) .................................................................................................. 15

iii

*Leaders of a Beautiful Struggle v. Balt. Police Dep't*,
   2 F.4th 330 (4th Cir. 2021) .................................................................................. 25, 26

*Legend Night Club v. Miller*,
   637 F.3d 291 (4th Cir. 2011) ...................................................................................... 26

*Media Matters for Am. v. FTC*,
   No. 25-5302, 2025 WL 2988966 (Oct. 23, 2025)....................................................... 26

*N. Va. Hemp & Agric., LLC v. Virginia*,
   125 F.4th 472 (4th Cir. 2025) .................................................................................... 25

*Nat'l Endowment for Democracy v. United States*,
   795 F. Supp. 3d 63 (D.D.C. 2025)............................................................................. 27

*Nken v. Holder*,
   556 U.S. 418 (2009)....................................................................................... 17, 25, 27

*Northwestern Memorial Hospital v. Ashcroft*,
   362 F.3d 923 (7th Cir. 2004) ...................................................................................... 23

*Parent AA v. U.S. Dep't of Just.*,
   No. 26-1104 (4th Cir. Apr. 29, 2026) .......................................................................... 2

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ...................................................................................... 10

*Pashby v. Delia*,
   709 F.3d 307 (4th Cir. 2013) ...................................................................................... 26

*Payne v. Taslimi*,
   998 F.3d 648 (4th Cir. 2021) ...................................................................................... 24

*Peters v. United States*,
   853 F.2d 692 (9th Cir. 1988) ...................................................................................... 19

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
   No. 2:25-mc-00042 (W.D. Wash.) .................................................................... *passim*

*Real Truth About Obama, Inc. v. FEC*,
   575 F.3d 342 (4th Cir. 2009) ...................................................................................... 25

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) .................................................................................... 27

*Sanchez v. McAleenan*,
   No. CV GLR-19-1728, 2024 WL 1256264 (D. Md. Mar. 25, 2024) .............................. 27, 28

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025)..................................................................................................... 10, 20

*Trump v. Int'l Refugee Assistance Project*,
   582 U.S. 571 (2017)............................................................................................................. 29

*United States v. Doe (Schwartz)*,
   457 F.2d 895 (2d Cir. 1972) ............................................................................................. 9

*United States v. Morton Salt Co.,*
   338 U.S. 632 (1950)............................................................................................................. 7

*United States v. Westinghouse Elec. Corp.*,
   638 F.2d 570 (3d Cir. 1980) ............................................................................................ 24

*Univ. of Tex. v. Camenisch*,
   451 U.S. 390 (1981)............................................................................................................ 28

*Va. Dep't of Corr. v. Jordan*,
   921 F.3d 180 (4th Cir. 2019) ........................................................................... 19, 24, 26, 27

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)................................................................................................... *passim*

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ......................................................................................... 10

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)........................................................................................................ 25, 26

**Statutes**

18 U.S.C. § 3486............................................................................................................. *passim*

**Rules**

FED. R. CIV. P. 23 ........................................................................................................... *passim*

FED. R. CIV. P. 45 ........................................................................................................... *passim*

FED. R. CIV. P. 81 ................................................................................................ 17, 18, 19, 27

**Other Authorities**

5 Moore's Federal Practice § 23.25 .................................................................................. 14

## INTRODUCTION

The federal government is waging a nationwide campaign to shut down pediatric transgender care by targeting the providers who deliver it; care that is lawful where provided and that every major medical association recognizes as medically necessary. As part of its campaign, the Department of Justice ("DOJ") initiated an "investigation into the distribution of certain prescription drugs to minors with gender dysphoria and related disorders."[1] Gov't Pet. for Enforcement of Admin. Subpoena at 1, *In re Admin. Subpoena 25-1431-032*, No. 4:26-mc-00006 (N.D. Tex. Apr. 30, 2026) (ECF 1). To do so, DOJ served "substantively identical" administrative subpoenas on healthcare providers across the country demanding the identities and protected health information ("PHI") of every transgender patient who received care— including "documents sufficient to identify each patient," diagnoses, parent/guardian information, and informed consent materials for minors. *In re 2025 Subpoena to Children's Nat'l Hosp.*, No. 1:25-cv-03780, 2026 WL 160792, at *4 (D. Md. Jan. 21, 2026) (*In re CNH Subpoena*), *appeal docketed*, No. 26-1104 (4th Cir. Feb. 2, 2026). *See also* Email from Ross Goldstein, DOJ, to Eve Hill (Nov. 14, 2025), Mot. to Quash Ex. W, *In re CNH Subpoena*, No. 1:25-cv-03780 (D. Md. Nov. 17, 2025) (ECF 1-38).

District courts across the country have condemned these identical PHI demands, including this Court in quashing the subpoena issued to Children's National Hospital ("CNH"). *See In re CNH Subpoena*, 2026 WL 160792. There, this Court held that "the Subpoena is an overreach untethered to any lawful purpose no matter who seeks protection from the court," explaining "[t]he Government has made improper use of a § 3486 administrative subpoena to out

---

[1] DOJ has described this as "a nationwide investigation—which involves RIH and numerous other actors." Gov't Motion to Stay or for Transfer of Venue at 3, *In re 2025 Subpoena to R.I. Hosp.*

Movants for receiving, and their Hospital for providing, healthcare the Executive characterizes as a 'stain on our Nation's history,'" that "[t]he Subpoena bears no credible connection to an investigation of any statutory violation by the Hospital" and "appears to have no purpose other than to intimidate and harass the Hospital and Movants, and those similarly situated." *Id.* at *9.

But DOJ's piecemeal extraction of PHI is outpacing the courts' ability to stop it. Even as one subpoena after another is quashed, DOJ has obtained the very records courts found unlawful in other cases: "the Department has obtained medical records from other pediatric hospitals that have used pharmaceuticals for gender-related medical interventions[.]" Appellants' Br. at 38–39, *Parent AA v. U.S. Dep't of Just.*, No. 26-1104 (4th Cir. Apr. 29, 2026).

And the pace is accelerating. Late last week, DOJ filed an enforcement petition against Rhode Island Hospital (RIH) in the Northern District of Texas, asserting that its investigation was "being carried out in the Northern District of Texas." Gov't Pet. to Enforce at 2, *In re Admin. Subpoena 25-1431-032*. Within hours—and without notice to any affected patient[2]—the Texas district court granted the petition. Order, *id.* (N.D. Tex. Apr. 30, 2026) (ECF 2). RIH has now appealed that order to the Fifth Circuit and moved to stay enforcement pending appeal. Notice of Appeal, *id.* (N.D. Tex. May 6, 2026) (ECF 6); Mot. for Stay Pending Appeal, *id.* (N.D. Tex. Apr. 30, 2026) (ECF 7). However, that case does not include consideration of the impacted families' privacy interests. Absent class-wide protection, DOJ will continue extracting transgender minors' PHI hospital by hospital, faster than any individual can move to quash.

Movants—a class of minor transgender patients whose providers received these identical subpoenas, together with their parents or guardians—now move to quash the subpoena requests

---

[2] Additionally, RIH itself did not have an opportunity to respond to the Government's petition before the court ruled. Mot. for Stay Pending Appeal at 3, *In re Admin. Subpoena 25-1431-03*.

that seek their PHI. Because DOJ is conducting a single investigation through substantively identical subpoenas, raising identical legal questions, Movants seek class treatment under Rule 23(b)(2) and class-wide relief. They also ask the Court to preserve the status quo so they can have a meaningful opportunity to be heard before sensitive medicals records are produced and the resulting privacy harms become irreversible.

## BACKGROUND

I.    **DOJ's Nationwide Campaign to End Pediatric Transgender Care**

The Administration has pledged to end pediatric transgender medical care. On January 28, 2025, the President issued Executive Order 14187, "Protecting Children from Chemical and Surgical Mutilation," which declared it is not U.S. policy to "fund, sponsor, promote, assist, or support" any child's "transition," branded such care for minors a "stain on our Nation's history" that "must end," and directed the Attorney General to "prioritize enforcement of protections against" such care.[3] Within days, the White House announced that the order was "already having its intended effect," naming CNH among the hospitals that had paused or ended treatment.[4]

DOJ promptly took action. In April 2025, the Attorney General issued a memorandum, "Preventing the Mutilation of American Children," directing U.S. Attorneys to "partner with state attorneys general to identify leads, share intelligence, and build cases against hospitals and practitioners," and warning DOJ would "hold accountable those who mutilate [our children]

---

[3] Protecting Children from Chemical and Surgical Mutilation, THE WHITE HOUSE (Jan. 28, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/protecting-children-from-chemical-and-surgical-mutilation/ (Executive Order 14187).

[4] President Trump Is Delivering on His Commitment to Protect Our Kids, THE WHITE HOUSE (Feb. 3, 2025), https://www.whitehouse.gov/releases/2025/02/president-trump-is-delivering-on-his-commitment-to-protect-our-kids/.

under the guise of care."[5] In June 2025, the Civil Division ordered components to "prioritize investigations of doctors, hospitals, pharmaceutical companies, and other appropriate entities" providing such care to minors.[6]

## II.    DOJ Issued Substantively Identical Subpoenas

On June 11, 2025, DOJ served more than 20 "substantively identical" administrative subpoenas under 18 U.S.C. § 3486 "to doctors and clinics involved in performing transgender medical procedures on children."[7] *See* Email from Goldstein to Hill, Mot. to Quash Ex. W, *In re CNH Subpoena*; Exhibit 16 (Subpoena). Six weeks later, the White House declared victory.[8]

Three subpoena requests are at the center of this motion:

- Request 11 demands "[d]ocuments sufficient to identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy";

- Request 12 seeks each patient's "clinical indications, diagnoses, or assessments that formed the basis for prescribing puberty blockers or hormone therapy"; and

- Request 13 seeks "[a]ll documents relating to informed consent, patient intake, and parent or guardian authorization." *In re CNH Subpoena*, 2026 WL 160792, at *4.

---

[5] Memorandum for Select Component Heads: Preventing the Mutilation of American Children at 3, 5, U.S. OFF. OF THE ATT'Y GEN. (Apr. 22, 2025), https://www.justice.gov/ag/media/1402396/dl (DOJ April 2025 Memorandum).

[6] Memorandum: Civil Division Enforcement Priorities at 2, U.S. OFF. OF THE ASSISTANT ATT'Y GEN. (June 11, 2025), https://www.justice.gov/civil/media/1404046/dl?inline.

[7] Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children, OFF. OF PUB. AFFS., U.S. DEP'T OF JUST. (July 9, 2025), https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical.

[8] President Trump Promised to End Child Sexual Mutilation—and He Delivered, THE WHITE HOUSE (July 25, 2025), https://www.whitehouse.gov/releases/2025/07/president-trump-promised-to-end-child-sexual-mutilation-and-he-delivered/.

These subpoenas are not the product of district-specific inquiries but of a single, centrally coordinated campaign. DOJ itself has acknowledged as much—even as it has sought to recast the Northern District of Texas as the primary venue for challenges to these subpoenas. In moving to transfer the challenge to the RIH subpoena, DOJ alleged for the first time that the Northern District of Texas is "the venue where this nationwide investigation . . . is being conducted."[9] Mot. to Stay or for Transfer of Venue at 3, *In re 2025 Subpoena to R.I. Hosp.* But the courts where these subpoenas have actually been served have rejected DOJ's view that the Northern District of Texas is the proper venue. The District of Rhode Island promptly denied DOJ's motion to transfer, holding that the first-to-file rule does not apply because minor patients' independent constitutional privacy claims "were neither raised nor considered in Texas and could not have been, as the affected parties were absent." Text Order, *In re 2025 Subpoena to R.I. Hosp.*, *id.* (May 7, 2026).

Nearly every court to consider these PHI demands, including this one, has concluded that they are impermissible and must be quashed. *See, e.g.*, *In re CNH Subpoena*, 2026 WL 160792, at *9 (quashing subpoena for its improper purpose); *In re Admin. Subpoena No. 25-1431-019*,

---

[9] The same three DOJ Consumer Protection Branch lawyers—Assistant Directors Goldstein and Runkle and Trial Attorney Dahlquist—appear as counsel of record in eight of the matters involving these subpoenas, and the subpoenas themselves designate Assistant Directors Goldstein and Runkle as the points of contact for compliance at DOJ Headquarters. *See In re CNH Subpoena*, No. 1:25-cv-03780 (D. Md.); *In re Admin. Subpoena No. 25-1431-019*, 1:25-mc-91324 (D. Mass.) (Boston Children's Hospital); *In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-cv-00041 (W.D. Wash.) (Seattle Children's Hospital); *In re Subpoena No. 25-1431-014*, No. 2:25-mc-00039 (E.D. Pa.) (Children's Hospital of Philadelphia); *In re: 2025 UPMC Subpoena*, No. 2:25-mc-01069 (W.D. Pa.); *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, Misc. No. 25-mc-00063 (D. Colo.) (Children's Hospital Colorado); *QueerDoc, PLLC v. U.S. Dep't of Just.*, No. 2:25-mc-00042 (W.D. Wash.) (Seattle Children's Hospital); *In Re: Admin. Subpoena 25-1431-032*, No. 4:26-mc-00006 (N.D. Tex.) (Rhode Island Hospital). *See also* Strachan Decl., Ex. 1, *In re Admin. Subpoena No. 25-1431-019*, No. 1:25-mc-91324 (D. Mass. July 8, 2025) (ECF 5-1). *See also* Mot. to Quash Subpoena, Ex. 2, *In Re: Admin. Subpoena No. 25-1431-017 to Children's Health Care d/b/a Children's Minnesota*, No. 0:26-mc-00026 (D. Minn. May 4, 2026) (ECF 3-3).

800 F. Supp. 3d 229, 236–39 (D. Mass. 2025) (quashing Boston Children's Hospital subpoena as issued for an improper purpose and "virtually unlimited in scope"), *appeal docketed*, No. 26-1093 (1st Cir. Jan. 30, 2026); *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295, 1303–04 (W.D. Wash. 2025) (quashing subpoena for improper purpose because DOJ "issued the subpoena first and searched for a justification second"), *appeal argued*, No. 25-7384 (9th Cir. Mar. 6, 2026); *In re Subpoena No. 25-1431-014,* 810 F. Supp. 3d 555, 578–81, 588–607 (E.D. Pa. 2025) (striking requests to Children's Hospital of Philadelphia (CHOP) seeking patients' identities and medical data as beyond statutory authority and outweighed by minors' privacy interests); *In re Subpoena No. 25-1431-016*, No. 2:25-mc-00041, 2025 WL 3562151, at *13 (W.D. Wash. Sept. 3, 2025) (rejecting enforcement of Seattle Children's Hospital subpoena based on "DOJ's threadbare justification . . . , and strong evidence suggesting that the subpoena was issued for an improper purpose"), *motion to alter or amend judgment denied*, 2026 WL 1102159 (W.D. Wash. Apr. 23, 2026); *In re 2025 UPMC Subpoena*, No. 2:25-mc-01069, 2025 WL 3724705, at *2–*3 (W.D. Pa. Dec. 24, 2025) (holding subpoena "tramples the Commonwealth of Pennsylvania's power to police, and legislate, matters of medical care"), *appeal docketed*, No. 26-1401 (3d Cir. Feb. 20, 2026); *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, Misc. No. 25-mc-00063, 2026 WL 33398, at *7 (D. Colo. Jan. 5, 2026) (report and recommendation) (concluding Children's Hospital Colorado subpoena was a "smokescreen" for ending transgender care).[10]

This Court, in *In re 2025 Subpoena to Children's National Hospital*, also concluded that the subpoena "seeks to fulfill" the Administration's "policy agenda through compliance born of

---

[10] On May 8, 2026, Children's National Hospital filed a motion to limit the subpoena. *In re: CNH Subpoena No. 25-1431-028,* No. 1:26-cv-01825 (D. Md. May 8, 2026) (ECF 1).

fear." 2026 WL 160792, at *9. Applying the Supreme Court's framework from *United States v. Morton Salt Co.*, the Court held DOJ's subpoena "was not issued for a legitimate governmental purpose, is not limited in scope to any legitimate purpose, and is oppressive in its breadth," and rejected anonymous production because "the Subpoena lacks a legitimate purpose." *Id.* at *8–*9 (citing *Morton Salt*, 338 U.S. 632, 652–53 (1950)); *see In re Subpoena Duces Tecum (Bailey)*, 228 F.3d 341, 349 (4th Cir. 2000). On that basis, the Court quashed Requests 11–13 (and any related requests for "patient medical records, patient identities, or identification of parents or guardians of patients") and barred DOJ from accessing materials already produced absent a separate, lawful source. Order, *In re CNH Subpoena*, No. 1:25-cv-03780 (D. Md. Jan. 21, 2026) (ECF 24). But it "decline[d] . . . to quash the Subpoena for persons other than Movants" on standing grounds, even while recognizing the subpoena "is an overreach untethered to any lawful purpose no matter who seeks protection from the court." *In re CNH Subpoena*, 2026 WL 160792, at *9.[11]

## III.    DOJ Expands Enforcement Efforts

Recent enforcement efforts underscore the need for class-wide resolution of these legal questions. In the face of unfavorable court decisions, DOJ responded that "this Department of Justice will use every legal and law enforcement tool available to protect innocent children from being mutilated under the guise of 'care.'"[12]

As noted, DOJ has confirmed that the harm Movants seek to prevent is already occurring

---

[11] DOJ has yet to identify any legitimate investigatory predicate for these PHI demands, this Court and others have concluded that DOJ's demand for patients' identities and medical records is not tied to any genuine investigation of the subpoenaed provider, reinforcing that these subpoenas were "not issued for a legitimate governmental purpose" and are "not limited in scope to any legitimate purpose." *In re CNH Subpoena*, 2026 WL 160792, at *8.

[12] *See* Josh Gerstein, *DOJ Tried to Subpoena an Online Trans Health Care Provider. A Judge Quashed It.*, Politico (Oct. 29, 2025), https://www.politico.com/news/2025/10/29/doj-subpoena-gender-affirming-care-ruling-00627891 (quoting DOJ statement in response to *QueerDoc* ruling).

7

as it continues to seek these records. It has "obtained medical records from other pediatric hospitals as part of this very investigation," using "multiple investigative tools, including HIPAA subpoenas," to do so. Appellants' Br. at 17, 24, *In re CNH Subpoena*. These admissions confirm DOJ is not merely threatening future disclosure; it is already acquiring patient medical records from hospitals pursuant to a single, centrally directed investigation.

DOJ has also sought to enforce the subpoenas in a district not connected to any of the subject hospitals. On April 30, 2026, it petitioned the Northern District of Texas to compel RIH to produce records responsive to a parallel subpoena, stating that "other hospitals to whom the Department issued similar subpoenas have complied," and obtained a same-day order requiring production within 14 days. Gov't Pet. to Enforce at 11–12, *In re Admin. Subpoena 25-1431-032*, No. 4:26-mc-00006 (ECF 1); Order, *id.* (ECF 2). DOJ's petition characterized this Court's order and other adverse rulings as the work of a "handful of mistaken district judges" whose decisions—DOJ insists—are "wrong." Gov't Pet. to Enforce at 12 n.4, *id.*[13] On May 6, 2026, RIH filed a notice of appeal to the Fifth Circuit Court of Appeals and moved to stay enforcement of the subpoena pending appeal. Notice of Appeal, *id.* (ECF 6); Mot. to Stay Pending Appeal, *id.* (May 6, 2026) (ECF 7).

Developments in the parallel CHOP litigation reinforce this pattern. On May 6, 2026— the day its Third Circuit opening brief was due—DOJ told CHOP's counsel that it would dismiss its appeal of the Eastern District of Pennsylvania's order limiting Requests 11–13 of the

---

[13] On May 4, 2026, the Office of the Child Advocate for the State of Rhode Island filed an emergency motion in the District Court of Rhode Island to quash the same subpoena on behalf of children in the custody of the Department of Children, Youth & Families, with a hearing set for May 12, 2026. Emergency Mot. to Quash, *In re Admin. Subpoena 25-1431-032 to Rhode Island Hospital*, No. 1:26-mc-00007 (D.R.I. May 4, 2026) (ECF 1). On May 7, 2026, DOJ responded with a motion to transfer venue to the Northern District of Texas, which the Rhode Island district court readily denied. Text Order on Gov't Mot. to Stay or for Transfer of Venue, *id.*

substantively identical CHOP subpoena. Br. in Supp. of Mot. to Confirm Jurisdiction at 4, *In re Subpoena No. 25-1431-014*, No. 2:25-mc-00039 (E.D. Pa. May 6, 2026) (ECF 47-1). CHOP has since moved to confirm that court's continuing jurisdiction, arguing that DOJ's unexplained abandonment of its appeal—combined with its efforts to compel a Rhode Island hospital's compliance in Texas—"suggest[s] that DOJ may seek to end-run this Court's jurisdiction over additional issues that arise involving the Subpoena." *Id.* at 4–5. DOJ's decision to forgo appellate review of an adverse ruling on Requests 11–13, even as it presses for expedited compliance with materially identical subpoenas elsewhere, confirms that piecemeal, hospital-by-hospital litigation cannot keep pace with the Department's nationwide investigation. And because the affected minor patients and their families are not parties to the CHOP proceedings, their privacy interests will not be considered or adjudicated there regardless of the outcome.

## ARGUMENT

**I.      Class Certification Is Appropriate to Challenge Substantively Identical Subpoena Requests Emanating from a Single Investigation**

The structural features of this case make Rule 23(b)(2) the appropriate—and only adequate—vehicle for relief.[14] DOJ is conducting a single, centrally directed investigation, implemented through materially identical subpoenas issued under a uniform statute (18 U.S.C. § 3486), prosecuted by the same DOJ Headquarters lawyers, against more than 20 pediatric providers throughout the country. The legal question—whether Requests 11–13 exceed the government's § 3486 authority and infringe minors' constitutionally protected privacy

---

[14] Movants do not concede that class certification is a prerequisite to quashing or modifying the Subpoena Requests as to all affected patients. A subpoena duces tecum "remains at all times under the control and supervision of a court," and courts possess inherent authority to quash or modify subpoenas that are unlawful, unreasonable, or unconstitutional, regardless of whether every affected individual is formally before the Court. *In re Grand Jury Subpoena*, 829 F.2d 1291, 1297 (4th Cir. 1987) (quoting *United States v. Doe (Schwartz)*, 457 F.2d 895, 898 (2d Cir. 1972)).

interests—is identical as to every class member, and a single injunction would provide complete relief to every class member while leaving DOJ free to pursue all lawful investigative avenues.

Courts have certified Rule 23(b)(2) classes to challenge precisely this kind of uniform, agency-wide conduct, even where the conduct is manifested through individual administrative actions against discrete entities. *See, e.g.*, *J.D. v. Azar*, 925 F.3d 1291, 1321–23 (D.C. Cir. 2019) (affirming Rule 23(b)(2) class certification challenging uniform federal policy implemented through individualized decisions); *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (commonality satisfied where class members were "exposed to a single statewide [agency] policy or practice"); *Walters v. Reno*, 145 F.3d 1032, 1045–47 (9th Cir. 1998) (certifying Rule 23(b)(2) class challenging INS use of standardized notice forms in individual proceedings). And the Supreme Court's decision in *Trump v. CASA, Inc.*, reinforces this conclusion: when challenging a uniform federal policy that injures a defined group of nonparties, Rule 23 is the constitutionally favored vehicle for relief. 606 U.S. 831, 847–50 (2025).

### A.  Class Definition

Movants seek certification of a class consisting of all minors, along with their parents or guardians, whose personal health information (PHI) or identifying information is subject, now or in the future, to compelled disclosure under a DOJ subpoena issued under 18 U.S.C. § 3486 as part of DOJ's national investigation into the distribution of certain prescription drugs to minors with gender dysphoria and related disorders seeking records or other PHI relating to transgender healthcare, including but not limited to patient-identifying information, parent/guardian information, clinical records, and informed-consent, intake, and parent or guardian authorization materials, and served on any healthcare provider or custodian of pediatric medical records, regardless of whether the recipient is formally designated a "children's hospital" under federal law.

10

### B.        Movants Readily Satisfy Rule 23

To proceed, Movants must satisfy the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as ascertainability as applied in the Fourth Circuit. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358–60 (4th Cir. 2014). Movants readily satisfy these requirements.

*First*, numerosity is beyond dispute. DOJ served more than 20 subpoenas in various states and targeted large pediatric providers. The number of patients is in the thousands and patients are geographically dispersed, far surpassing the 40 putative class members necessary to meet this requirement and making joinder impracticable. *See, e.g.*, *In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018); *see also* Compl. ¶ 16, *Boe v. Children's Hosp. Colo.*, No. 2026-cv-30291 (D. Denver Dist. Ct. Jan. 20, 2026) (noting the hospital's TRUE Center "has served over 3,000 patients" and as of January 2025, was "providing medication for over 800 patients"). This is precisely the sort of circumstance in which Rule 23(a)(1) is designed to operate: when the size and dispersion of affected persons make individual joinder unrealistic and where piecemeal litigation would defeat efficient adjudication. *See* FED. R. CIV. P. 23(a)(1).

*Second*, commonality is established. Rule 23(a)(2) requires that class claims "depend upon a common contention" that is "capable of classwide resolution." *Dukes*, 564 U.S. at 350. What matters is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted) (emphasis in original).

Every class member faces the same harm from the same PHI demands: each arises under the same statute, 18 U.S.C. § 3486; their legality does not turn on individualized facts; and each class member raises a single, identical question—whether Requests 11-13 constitute a lawful exercise of the federal government's § 3486 administrative subpoena authority. Notably, this

11

Court has already recognized the commonality of these members, holding that "the [CNH] Subpoena is an overreach untethered to any lawful purpose no matter who seeks protection from the Court," and its purpose, "to intimidate and harass the Hospital and Movants," also extends to "*those similarly situated." In re CNH Subpoena*, 2026 WL 160792, at *9 (emphasis added).

The uniformity of DOJ's conduct is also reflected in the uniformity of its justifications: across these proceedings, DOJ has failed to articulate any specific, individualized allegations against the Hospitals, instead relying on the same vague, non-individualized rationales rejected by every court to consider them. As this Court stated, DOJ "set[] forth no basis on which it suspects the Hospital of misbranding or distributing drugs, or any other conduct, as proscribed by the FDCA." *In re CNH Subpoena*, 2026 WL 160792, at *8; *accord In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 238 (DOJ failed to articulate at least "an iota of suspicion that BCH is actually engaging in fraudulent billing practices or off-label promotion"); *In re Subpoena Duces Tecum No. 25-1431-016*, 2025 WL 3562151, at *7 (DOJ "must at least show that it has a realistic expectation rather than merely an 'idle hope'" of discovering information related to a federal healthcare offense) (citation omitted); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 580–81 (DOJ "lacks statutory authority for a rambling exploration of the Hospital's files to learn the names and medical treatment of children"); *QueerDoc*, 807 F. Supp. 3d at 1303 (DOJ "issued the subpoena first and searched for a justification second"). Nor, for the same reasons, is there anything about any individual's circumstances—or any specifics about the different hospitals—that will have any bearing on the resolution of this case.

***Third***, typicality is satisfied. Rule 23(a)(3) requires that the representatives' claims "are typical of the claims or defenses of the class"—met when the representative's claim is not "so different" from absent members' claims that proof of the representative's claim will not advance

theirs. *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466–67 (4th Cir. 2006); *see Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) ("[A]s goes the claim of the named plaintiff, so go the claims of the class." (citation omitted)).

The named Movants are or were minors who received transgender care from providers served with DOJ subpoenas containing Requests 11–13. They challenge the same PHI demands on the same legal grounds as the rest of the class and seek the same prospective relief—an order quashing Requests 11–13 (and any materially identical PHI requests), an injunction barring seeking, receiving, or using responsive PHI, and sequestration and advance-notice obligations. As this Court already recognized for CNH patients, these individuals all stand in the same shoes and, given the overlap in the subpoenas, patients at other hospitals are comparably situated. No individual defenses or case-specific facts threaten to overwhelm the class's shared claims. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156–59 (1982).

*Fourth,* adequacy of representation is rooted in constitutional due process: a class action judgment can bind absent members only if their interests were adequately represented. *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940). Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This inquiry "'tend[s] to merge' with the commonality and typicality criteria" and "also factors in competency and conflicts of class counsel." *Amchem Prods.*, 521 U.S. at 626 n.20 (quotations omitted).

Adequacy is met here. The requested relief is unitary, prospective, and indivisible—quashal of Requests 11–13 (and any materially identical PHI requests), injunction barring DOJ from seeking, demanding, receiving, or using responsive PHI, sequestration of any PHI already obtained, and advance notice before any further enforcement activity. Because that relief would operate identically for every class member, there is no basis to anticipate intraclass conflicts, and

13

no member has an interest adverse to any other in obtaining it. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003) ("To defeat the adequacy requirement of Rule 23, a conflict 'must be more than merely speculative or hypothetical.'" (quoting 5 Moore's Federal Practice § 23.25[4][b][ii] (2002)).[15]

Further, under Rule 23(g), in appointing class counsel, the Court must consider: (i) work counsel has done in identifying or investigating potential claims; (ii) counsel's experience with class actions and other complex litigation; (iii) counsel's knowledge of the applicable law; and (iv) resources counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A). Proposed class counsel satisfy each factor. They are experienced civil rights litigators who have secured favorable rulings protecting class members against one of these very subpoenas and will continue to prosecute vigorously on behalf of the class. Counsel have extensive experience in civil rights class actions and complex federal litigation, deep knowledge of the Fourth Amendment, Health Insurance Portability and Accountability Act (HIPAA), and administrative subpoena law at issue here, and have committed substantial resources to this case. *See* Decl. of Eve Hill, Esq., in Supp. of Mot. for Class Certification and Appointment of Class Counsel ¶¶ 3–9; Decl. of S. Minter in Supp. of Mot. for Class Certification and Appointment of Class Counsel ¶¶ 2–4, 7–10, 16–18; Decl. of Josh Rovenger in Supp. of Mot. for Class Certification and Appointment of Class Counsel ¶¶ 2–5, 9–11, 15–16. Indeed, proposed class counsel include the attorneys who successfully litigated the case in this district. Rovenger Decl. ¶ 16. *See also In re CNH Subpoena*, 2026 WL 160792.

***Finally***, the proposed class is ascertainable. In this Circuit, Rule 23 contains an "implicit

---

[15] The fact that the named Movants proceed pseudonymously does not affect adequacy. *See, e.g.*, *CASA, Inc. v. Trump*, 793 F. Supp. 3d 703, 724–25 (D. Md. 2025) (certifying Rule 23(b)(2) class and noting that plaintiffs' pseudonymous appearance does not defeat adequacy).

14

threshold requirement that the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co.*, 764 F.3d at 358 (quoting *Hammond v. Powell,* 462 F.2d 1053, 1055 (4th Cir.1972)). "A class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.*

Class membership here turns on objective criteria: a minor patient (or their parent or guardian) whose PHI or identifying information is subject to compelled disclosure under a § 3486 subpoena issued in DOJ's investigation and served on any pediatric healthcare provider or custodian. These criteria are verifiable from provider records and the subpoenas themselves.[16] Because membership can be determined by reference to records maintained in the ordinary course of business and to the subpoenas, the class is neither amorphous nor subjective. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (objective records-based criteria satisfy the Fourth Circuit's ascertainability requirement). The Fourth Circuit's ascertainability doctrine does not require "identif[ication of] every class member at the time of certification" and is satisfied so long as a court can determine class membership without "extensive and individualized fact-finding." *EQT Prod. Co.*, 764 F.3d at 358 (quotation omitted). That standard is readily met here.

## C.    Rule 23(b)(2) Certification Is Tailored to the Relief Required

Rule 23(b)(2) certification is proper when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

---

[16] DOJ has not publicized the list of providers receiving § 3486 subpoenas, making it impossible for Movants to know exactly which providers have been served. However, based on court filings and news reports, Movants have ascertained that Boston Children's Hospital, Children's Hospital Colorado, Children's Hospital Los Angeles, Children's Hospital of Philadelphia, Children's Minnesota, Children's National Hospital, Michigan Medicine, Mt. Sinai Health System, NYU Langone, QueerDoc, Rady Children's Hospital, Rhode Island Hospital, Seattle Children's Hospital, and University of Pittsburgh Medical Center received subpoenas.

15

corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). The "key" to a (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citation omitted). Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* at 360.

The present action is a quintessential (b)(2) class action. DOJ has acted uniformly to enforce materially identical PHI demands against more than 20 providers. Said differently: DOJ unlawfully seeks the same information as to each and every one of these putative class members.

As DOJ itself confirmed to proposed class counsel, the subpoenas are standardized. Each contains the same Requests 11–13, using the same language to demand the same categories of information: the identities and medical records of minors who received transgender healthcare. *See* Gov't Pet. to Enforce, Ex. B, *In re Admin. Subpoena 25-1431-032*, No. 4:26-mc-00006 (ECF 1-2) (subpoena); *In re CNH Subpoena*, 2026 WL 160792, at *4 (describing Requests 11–13); Email from Goldstein to Hill, Mot. to Quash Ex. W, *In re CNH Subpoena* (confirming CNH subpoena is "substantively identical" to Boston Children's and CHOP subpoenas).

Given DOJ's uniform approach, Movants seek only indivisible injunctive and declaratory relief—an order quashing Requests 11–13 (and any materially identical PHI requests), an injunction barring DOJ from seeking, receiving, or using any PHI responsive to those requests, sequestration and non-use of any such PHI already obtained, and at least seven days' advance notice to class counsel before any further enforcement activity. Class treatment is proper because a single order and declaratory judgment will provide complete relief to every class member, while piecemeal litigation could threaten their interests.

16

A quashal order is precisely the kind of indivisible equitable remedy Rule 23(b)(2) was designed to authorize. For Rule 23(b)(2) purposes, what matters is not the technical label affixed to the remedy but whether "a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. A class-wide order quashing a uniform subpoena satisfies that test: it directs recipients not to produce records—classic prohibitory equitable relief. *See Nken v. Holder*, 556 U.S. 418, 428 (2009) (describing an injunction as "a means by which a court tells someone what to do or not to do"). And even if the Court characterized the remedy as declaratory rather than injunctive, a declaration that Requests 11–13 are unlawful as to the class would "correspond" to injunctive relief because it would, "as a practical matter," afford the class the same protection from compelled disclosure. FED. R. CIV. P. 23 advisory committee's note to 1966 amendment.

## II.    Requests 11–13 Should Be Quashed as to All Class Members

The Court has independent statutory and constitutional authority to quash Requests 11–13 on a class-wide basis. As this Court already held in *In re CNH Subpoena*, patients who are the subjects of the subpoena requests possess both statutory standing under Rule 45 and constitutional standing under Article III to challenge the subpoenas' demand for their PHI. 2026 WL 160792, at *4–*5. Each of those bases independently authorizes class-wide relief here. Under Rule 45, made applicable to administrative subpoenas under § 3486 by Rule 81(a)(5), the Court has statutory authority to quash Requests 11–13 (and any materially identical patient-data requests) in each subpoena served on the certified class members' healthcare providers. *See* FED. R. CIV. P. 45(d)(3)(A)(iii)- (iv). And under Article III, the named Movants' concrete injuries

17

support an order running to all similarly situated class members.[17] *See supra* Part I.B. This Court has already held that Requests 11–13 issued to CNH "[were] not issued for a legitimate governmental purpose, [are] not limited in scope to any legitimate purpose, and [are] oppressive in [their] breadth," and rejected anonymous production because "the Subpoena lacks a legitimate purpose." *In re CNH Subpoena*, 2026 WL 160792, at *8–*9. Every other federal court to consider materially identical requests on a contested motion has reached the same conclusion. *See cases cited supra* p. 5–6. The same defects warrant the same relief here, on a class-wide basis.

A.    **Rule 45 Authorizes Class-wide Quashal**

Rule 45 requires the Court to quash a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iii)–(iv). Through Rule 81(a)(5), those protections apply to § 3486 administrative subpoenas. *In re CNH Subpoena*, 2026 WL 160792, at *5; *see also Bailey*, 228 F.3d at 348–49. Under the Fourth Circuit's *Bailey* framework, a § 3486 subpoena must be (1) issued for a legitimate governmental purpose; (2) limited in scope to reasonably relate to and further that purpose; (3) sufficiently specific so that compliance is not unreasonably burdensome; and (4) not so overly broad as to be oppressive. *Id.* at 349. And under Rule 45, courts must consider burdens on "any person," giving "special weight" to the privacy and confidentiality interests of nonparty patients. *Va. Dep't of*

---

[17] As this Court explained in its analysis of Article III standing: "First, the subpoena plainly threatens to cause immediate injury to Movants' default and concrete right to maintain the privacy of their medical records. Second, were the hospital to comply with the Subpoena, or were the Government to disclose or use those medical records for purposes of an investigation of purported FDCA and False Claims Act violations by the Hospital, Movants' privacy interests would be directly and proximately injured; similarly, if the Government had not issued the Subpoena, Movants' would not face the imminent injury about which they complain. Third, Movants' complained of injury to their right to privacy in their medical records is directly redressable by this civil action to quash the Subpoena." *In re CNH Subpoena*, 2026 WL 160792, at *5.

18

*Corr. v. Jordan*, 921 F.3d 180, 188–90 (4th Cir. 2019).

Two points confirm this Court may resolve those common burdens class-wide. *First*, Rule 23 fits this procedural posture. Section 3486(a)(7) incorporates the standards for judicial subpoenas, and Rule 81(a)(5) extends the Rules—including Rule 23—to proceedings to enforce subpoenas issued by a federal officer or agency. FED. R. CIV. P. 81(a)(5); *see In re CNH Subpoena*, 2026 WL 160792, at *5 (applying Rule 45 to § 3486 subpoena through Rule 81(a)(5)). Movants are aware of no decision holding Rule 23 unavailable in such a proceeding; courts confronting uniform subpoenas have granted relief to all affected nonparties. *See Peters v. United States*, 853 F.2d 692, 695–700 (9th Cir. 1988) (quashing INS "general group subpoena" as to all individuals whose records were sought); *In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC*, 148 F.4th 1056, 1067 (9th Cir. 2025) (same as to all targeted ISP subscribers).

*Second*, the Fourth Circuit's reading of Rule 45 in *Jordan* already embraces the premise of class treatment. *Jordan* construed Rule 45 to "encompass[] burdens on any 'person,' not just the recipient of the subpoena," and to require courts to give "special weight" to the privacy and confidentiality interests of nonparties. 921 F.3d at 188–90. That reading necessarily contemplates a defined population of affected nonparties whose burdens the court must weigh together— precisely this case, where Requests 11–13 inflict materially identical privacy intrusions on every responsive patient. Rule 23(b)(2) is the procedural complement, allowing the Court to resolve those common burdens "in one stroke," *Dukes*, 564 U.S. at 350, rather than forcing each affected family to challenge identical subpoenas while DOJ continues collecting records elsewhere.

This Court's prior observation that it could not extend relief beyond the named CNH movants on standing grounds, *In re CNH Subpoena*, 2026 WL 160792, at *9, supports class-wide relief here—it is precisely the limitation that Rule 23 is designed to overcome. Once a class

19

is certified, the named representatives' standing supports relief for all class members, regardless

of whether each absent member has independently invoked the court's jurisdiction. *Sosna v.*

*Iowa*, 419 U.S. 393, 402–03 (1975); *Gratz v. Bollinger*, 539 U.S. 244, 263–68 (2003); *see also*

*CASA, Inc.*, 606 U.S. at 849–50 (Rule 23 class is the proper vehicle for relief for identifiable

nonparties). The named Movants here have unquestionable standing to challenge the subpoena

threatening disclosure of their own PHI; the class-action mechanism permits the Court to extend

that relief to similarly situated nonparties whose injuries arise from the same unlawful conduct.

Once the Rule 23(b)(2) class is certified, Movants are properly situated, as

representatives of every minor patient (and their parents or guardians) whose PHI or identifying

information is responsive to Requests 11–13 or materially identical PHI demands within the

scope of the class definition, to seek quashal on behalf of the class as to each subpoena identified

in the class definition. *See Yamasaki*, 442 U.S. at 702 (scope of relief is "dictated by the extent of

the violation established"); *CASA, Inc.*, 606 U.S. at 849–50 (Rule 23 class is the proper vehicle

for relief that runs to identifiable nonparties).

### B.       As in *CNH,* Requests 11–13 Fail Multiple *Bailey* Prongs

Requests 11–13 fail *Bailey* on multiple, independently sufficient grounds, and as this

Court—and every other court to consider these requests on a contested motion—has so held,[18]

the subpoenas were not issued for a legitimate governmental purpose. The Administration

pledged to end pediatric transgender care, and DOJ's leadership has expressly directed

Department components to "build cases against hospitals and practitioners" providing such

care.[19] The White House publicly catalogued the providers—including CNH—that have ended or

---

[18] *See cases cited supra* p. 5–6.

[19] Exec. Order 14187, *supra* note 3; DOJ April 2025 Memorandum, *supra* note 5; *President Trump Is Delivering on His Commitment*, *supra* note 4.

curtailed pediatric transgender care "following President Trump's executive action." That record establishes that DOJ "issued the subpoena[s] first and searched for a justification second." *QueerDoc*, 807 F. Supp. 3d at 1303. Six federal courts have agreed. *See cases cited supra* p. 5–6.

*Second*, Requests 11–13 are not "limited in scope to reasonably relate to and further" any legitimate FDCA inquiry. *Bailey*, 228 F.3d at 349. The patient-identifying and clinical information DOJ seeks has no demonstrated nexus to whether providers introduced misbranded or unapproved drugs into interstate commerce. This Court so held: "[i]f the Government is pursuing FDCA violations, it is utterly unclear to this court why the Government demands production of adolescent patient records, including patient names, dates of birth, social security numbers, parent information, clinical indications, diagnoses, and parent authorization forms," and "[n]othing the Government submits plausibly explains the purported connection between the documents it demands and suspected Hospital FDCA violations." *In re CNH Subpoena*, 2026 WL 160792, at *8. Other courts have reached the same conclusion. *See, e.g.*, *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 579–80 ("[T]he connection between child-patient-identifying information and potential fraudulent billing codes or unlawful off-label promotion is tenuous at best and cannot shoulder the weight of compelled disclosure of a child's medical files."). DOJ can pursue any genuine FDCA inquiry through appropriately tailored versions of the other 12 requests—which are overbroad but at least address billing data, manufacturer communications, and promotional materials. That DOJ can investigate without obtaining children's identities or medical files confirms that Requests 11–13 are unnecessary as well as overbroad.

DOJ's recent conduct confirms that Requests 11–13 are not necessary to its asserted FDCA inquiry. On December 8, 2025, DOJ "withdrew Subpoena Requests 11, 12, and 13 in their entirety" and agreed that Children's Hospital of Los Angeles could redact any patient-

21

identifying information from its production. *See* Settlement Agreement, *In re 2025 Children's Hosp. of L.A. Subpoena*, No. 2:25-cv-11183 (C.D. Cal. Jan. 22, 2026) (ECF 25-1). In the UPMC proceeding, DOJ agreed to accept only de-identified records and disclosed "no current plans" to issue another HIPAA subpoena to UPMC for patient records. *See* Gov't Supp. Br. at 2, *In re 2025 UPMC Subpoena*, No. 2:25-mc-01069-CB (W.D. Pa. Jan. 16, 2026) (ECF 58). These concessions confirm what other courts have independently concluded: the identifying material in Requests 11–13 is not necessary for any genuine FDCA investigation. DOJ's insistence on identical material from RIH, and its continued pursuit of documentation from CNH despite this Court's order, cannot be reconciled with those concessions and should be rejected.

*Third*, the requests are oppressively broad. They demand "an astonishingly broad array of documents and information that are virtually unlimited in scope," with no temporal, geographic, or clinical limits. *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 238. This Court has already held that no post hoc narrowing can cure the disconnect between their scope and DOJ's stated purpose. That disconnect is so wide that "even if the Subpoena sought only adolescent patient names and social security numbers, or was limited to patient 'diagnoses' and physician 'assessments,'" they still could not be squared with any appropriate purpose or constitutional limit on an FDCA investigation. *In re CNH Subpoena*, 2026 WL 160792, at *8 n.17. Each defect is independently fatal and together confirm that Requests 11–13 cannot lawfully be enforced against any class member's provider.

The recent decisions in *Endocrine Society v. FTC* and *WPATH v. FTC* reinforce this conclusion. Facing a federal investigative demand also stemming from the Administration's efforts to target pediatric transgender healthcare, the court found that the FTC's Civil Investigative Demand sought "the names and qualifications of anyone who developed claims of

gender-affirming care's safety and effectiveness for minors, which could cover thousands of the Society's members and all of its staff," and concluded that "the CID seeks substantive content that itself would be protected by the First Amendment and the identity of the individuals who created the content," raising concerns "that its true aim is to suppress the Society's speech regarding gender-affirming care." Mem. & Op. at 29, *Endocrine Soc'y*, No. 1:26-cv-00512 (D.D.C. May 7, 2026) (ECF 38); *see also* Mem. & Op., *WPATH*, No. 1:26-cv-00532 (D.D.C. May 7, 2026) (ECF 41) (reaching same conclusion and granting same relief). The same concerns apply here, where DOJ's demands for patient identities and medical records appear designed to chill lawful medical practice rather than serve any legitimate investigative purpose.

### C. Compelled Disclosure Violates Minors' Constitutional Privacy and Imposes Undue Rule 45 Burdens

Independently, Requests 11–13 are also unenforceable because compelled disclosure of minors' identities, diagnoses, and transgender care records would violate the constitutionally protected interest in informational privacy. *See Whalen v. Roe*, 429 U.S. 589, 599 (1977); *see also In re CNH Subpoena*, 2026 WL 160792, at *8 ("There can be no question that Movants have a constitutionally reasonable expectation of privacy in the highly sensitive medical records subject to the Subpoena." (citing *Doe v. Broderick*, 225 F.3d 440, 451 (4th Cir. 2000)). Information involving sex and medical treatment of minors is "precisely the sort intended to be protected by" the constitutional right to privacy. *Doe v. Se. Pa. Transp. Auth.*, 72 F.3d 1133, 1138 (3d Cir. 1995). And "[t]he more intimate or personal the information, the more reasonable the expectation" of confidentiality. *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011) (citation omitted). The Seventh Circuit's decision in *Northwestern Memorial Hospital v. Ashcroft* is directly on point: it affirmed quashing a DOJ subpoena for analogous medical records, holding that re-identification risk and the dignitary, safety, and chilling harms of

23

disclosure rendered redaction inadequate. 362 F.3d 923, 928–30 (7th Cir. 2004).

These privacy invasions also constitute "undue burdens" under Rule 45. *Jordan*, 921 F.3d at 189 (a subpoena "may impose a burden by invading privacy or confidentiality interests," and "special weight" must be given to nonparty burdens). Where, as here, this Court has already found the same DOJ requests to be "a pretext to fulfill the Executive's well-publicized policy objective to terminate and block gender affirming healthcare," *In re CNH Subpoena*, 2026 WL 160792, at *8, the government has no cognizable interest to place on the privacy scale. Applying the Third Circuit's *Westinghouse* balancing test, the *CHOP* court confirmed that the inadequacy of DOJ's justifications and the weight of the privacy interests foreclose enforcement. *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 588–607 (citing *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir. 1980)). This Court has already struck the same balance under binding Fourth Circuit law, holding that minor patients' "interest in maintaining the privacy of their sensitive medical records outweighs any interest of the Government in calling for their production" because "[n]o proper (never mind compelling) governmental purpose has been demonstrated." *In re CNH Subpoena*, 2026 WL 160792, at *8 (citing *Payne v. Taslimi*, 998 F.3d 648 (4th Cir. 2021)). DOJ's own representations in parallel litigation that it would accept "anonymized records as a first pass" confirm that patient-identifying information is unnecessary to its asserted investigation. And anonymization is no answer: this Court has already held that, where Requests 11–13 lack a legitimate purpose, the defect "cannot be ameliorated by providing patient records in redacted form." *In re CNH Subpoena*, 2026 WL 160792, at *9. The Rule 45 balance therefore tips decisively against enforcement.

III.    **While Briefing on the Above Motions Are Underway, This Court Should Conditionally Certify the Proposed Class and Enter a Preliminary Injunction to Preserve the Status Quo**

To obtain a preliminary injunction, Movants must make a clear showing that: (1) they are

likely to succeed on the merits; (2) they are likely to suffer irreparable harm absent relief; (3) the balance of equities tips decisively in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where, as here, the federal government is the opposing party, the third and fourth factors merge. *Nken*, 556 U.S. at 435. The Fourth Circuit applies *Winter*'s strict standard and requires a clear showing on each factor. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *aff'd on remand*, 607 F.3d 355 (4th Cir. 2010) (per curiam). The Fourth Circuit has reiterated *Winter*'s formulation in modern cases addressing preliminary relief and explained that failing any one factor defeats the motion. *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (en banc) (citation omitted); *N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 497 (4th Cir. 2025) (citation omitted). District courts in this Circuit have applied these principles to grant preliminary injunctive relief against unlawful federal action. *See Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d 243 (D. Md. 2025), *vacated on standing and likelihood-of-success (facial-challenge) grounds*, 167 F.4th 86 (4th Cir. 2026).

**Likelihood of Success on the Merits.** For the reasons above, Movants are likely to prevail on the merits, as this Court and others have invalidated identical PHI demands.

**Irreparable Harm.** Compelled disclosure of minors' identities and medical records inflicts immediate, irreparable harm that cannot be undone or compensated once names, identifying information, diagnoses, mental-health assessments, and consent documents reach federal agents and prosecutors. *Winter*, 555 U.S. at 22. This threat is not hypothetical: DOJ has obtained responsive records from other hospitals through this very subpoena campaign, meaning that children's PHI is already in the government's hands. Gov't Pet. to Enforce at 11–12, *In re*

25

*Admin. Subpoena 24-1431-032*. The Fourth Circuit treats privacy invasions as cognizable subpoena burdens as to "'any person,'" *Jordan*, 921 F.3d at 188, and recognizes ongoing privacy and constitutional intrusions—and threats to medical care—as irreparable, *Leaders of a Beautiful Struggle*, 2 F.4th at 346–48; *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011); *Pashby v. Delia*, 709 F.3d 307, 328–29 (4th Cir. 2013).

Recent decisions enjoining analogous federal demands targeting transgender healthcare confirm that present injury arises from the demand itself, not from later enforcement alone. *See* Mem. & Op. at 14–15, *Endocrine Soc'y*; Mem. & Op. at 5–6, *WPATH*. Rejecting the government's contention that plaintiffs suffer no "penalty or other legal detriment" absent court-ordered enforcement, the court held that "[t]he CID and the accompanying threat of future enforcement sit as a Sword of Damocles suspended over Plaintiff's head." Mem. & Op. at 15, *Endocrine Soc'y* (quoting *Media Matters for Am. v. FTC*, No. 25-5302, 2025 WL 2988966, at \*4 (Oct. 23, 2025)).

Redaction and anonymization are no answer. Addressing the instant DOJ campaign, this Court recognized the "incredibly sensitive and personal nature" of the information and held that anonymization cannot cure the harm absent a lawful purpose. *In re CNH Subpoena*, 2026 WL 160792, at \*1 n.1, \*9. The Seventh Circuit reached the same conclusion in quashing a DOJ subpoena for abortion patients' records, holding that re-identification risks, dignitary injury, and chilling effects rendered redaction inadequate. *Nw. Mem'l Hosp.*, 362 F.3d at 928–30. District courts confronting demands for minors' records agree. *See, e.g.*, *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 594–606. No post-disclosure remedy can make families whole for these immediate, concrete, and irreversible injuries. *See Winter*, 555 U.S. at 22; *Leaders of a Beautiful Struggle*, 2 F.4th at 346–48; *Jordan*, 921 F.3d at 188–89.

26

***Balance of Equities and the Public Interest.*** Because the government is the opposing party, these factors merge. *Nken*, 556 U.S. at 435; *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022). An injunction would restrain only PHI demands this Court and others have already found unlawful, and the government identifies no cognizable prejudice from forgoing patients' identities and medical files pending merits adjudication. *In re CNH Subpoena*, 2026 WL 160792, at *7–*8. The government "'cannot suffer harm from an injunction that merely ends an unlawful practice,'" and legal compliance serves the public interest. *Sanchez v. McAleenan*, No. CV GLR-19-1728, 2024 WL 1256264, at *14 (D. Md. Mar. 25, 2024) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)); *Nat'l Endowment for Democracy v. United States*, 795 F. Supp. 3d 63, 73 (D.D.C. 2025). The countervailing harm to youth and their families—outing, harassment, loss of privacy, threats to safety, and chilling of lawful medical care—is profound and irreversible, as this Court has recognized. *In re CNH Subpoena*, 2026 WL 160792, at *8–*9. *Jordan* reinforces this conclusion: courts must weigh heavily the privacy and confidentiality burdens subpoenas impose on nonparties—precisely the harms threatened to minors and their families here. 921 F.3d at 189; *see In re CNH Subpoena*, 2026 WL 160792, at *5 (applying Rule 81(a)(5) to protect nonparty patients from Rule 45 burdens).

This court has recognized that protecting minors' medical privacy, preventing chilling effects on essential pediatric care, and preserving trust in the physician patient relationship "outweigh[ ] any interest of the Government in calling for the[ ] production of [sensitive medical records." *In re CNH Subpoena*, 2026 WL 160792, at *8–*9. State attorneys general have likewise described these subpoenas as an "assault on privacy."[20] Preliminary relief preserves the

---

[20] Attorney General Bonta: Subpoenas Targeting the Medical Records of Transgender Youth Are an Assault on Privacy, CAL. OFF. OF THE ATT'Y GEN. (Oct. 30, 2025), https://oag.ca.gov/news/press-releases/attorney-general-bonta-subpoenas-targeting-medical-records-transgender-youth-are.

27

status quo ante—confidentiality of minors' PHI—pending the Court's adjudication of DOJ's demands. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

***Conditional Certification.*** Conditional class certification is warranted here. Rule 23(b)(2) is designed for precisely this situation: where "the party opposing the class has acted or refused to act on grounds that apply generally to the class," a single injunction can "provid[e] final injunctive relief . . . respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Such "indivisible" injunctive relief is the "key" to a (b)(2) class. *Dukes*, 564 U.S. at 360. And the rules expressly contemplate early action: a court may rule on certification "[a]t an early practicable time," FED. R. CIV. P. 23(c)(1)(A), and may "alter[] or amend[]" that order as the case develops, FED. R. CIV. P. 23(c)(1)(C). Those provisions exist for cases like this one, where DOJ's uniform subpoena campaign threatens immediate, class-wide harm that a single order can prevent. Consistent with that design, district courts in this Circuit have granted class-wide preliminary relief before formal certification where—as here—agency conduct is generally applicable to every putative class member. *See J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 376 (D. Md. 2019); *Sanchez v. McAleenan*, No. GJH-19-1728, 2020 WL 607032, at *5 n.7 (D. Md. Feb. 7, 2020), *modified in part*, 2020 WL 6263428 (D. Md. Oct. 23, 2020).

### A.    Each Component of the Requested Relief Is Necessary

All aspects of the proposed injunction are necessary to safeguard minors' PHI from irreversible disclosure. First, an advance-notice and no-production rule—obligating DOJ to provide class counsel at least seven days' advance notice before filing any enforcement petition or accepting any production of PHI responsive to Requests 11–13, and barring DOJ from receiving or reviewing such PHI in the interim—will preserve the status quo and let affected families be heard before any enforcement order issues. The interval is minimally burdensome and narrowly tailored to prevent non-remediable harms before meaningful judicial review. *See*

*Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579–80 (2017) (courts crafting preliminary relief should "'mold its decree to meet the exigencies of the particular case'" (quotation omitted)).

Second, requiring DOJ to segregate any PHI already obtained, refrain from reviewing or disseminating it, and not rely on it for any purpose during the litigation will limit inadvertent or pre-order disclosures and prevent the government from exploiting contested material while the Court adjudicates legality. The Supreme Court squarely authorizes such remedies: even after compliance with an enforcement order, courts may order the government to return, destroy, or refrain from using materials obtained under disputed process, precisely to mitigate the intrusion to privacy and preserve the parties' positions pending review. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12–18 (1992). This Court has already used the same tool in this very investigation, directing that DOJ "shall no longer have access" to any quashed records produced before the order "unless obtained through lawful, proper means, and not the Subpoena," and required the parties to meet and confer within seven days regarding appropriate prophylactic measures. Order at 1–2, *In re CNH Subpoena*.

## REQUESTED RELIEF

Movants respectfully request that the Court:

1. Certify, under Rule 23(b)(2), a class consisting of all minors, along with their parents or guardians, whose personal health information (PHI) or identifying information is subject, now or in the future, to compelled disclosure under a DOJ subpoena issued under 18 U.S.C. § 3486 as part of DOJ's national investigation into the distribution of certain prescription drugs to minors with gender dysphoria and related disorders seeking records or other PHI relating to transgender healthcare, including but not limited to patient-identifying information, parent/guardian information, clinical records, and informed-consent, intake, and parent or guardian authorization

29

materials, and served on any healthcare provider or custodian of pediatric medical records, regardless of whether the recipient is formally designated a "children's hospital" under federal law.

2.   Appoint appropriate class representatives and, pursuant to Rule 23(g), appoint class counsel to represent the certified class. FED. R. CIV. P. 23(g).

3.   Quash, under Federal Rule of Civil Procedure 45(d)(3)(A) and 18 U.S.C. § 3486, Requests 11–13 (and any materially identical PHI requests, however captioned) in each § 3486 subpoena identified in the class definition—served on any health care provider or custodian of pediatric medical records, regardless of whether the recipient is formally designated a "children's hospital" under federal law—and any further such subpoena issued during the pendency of this action.

4.   Enter a preliminary injunction enjoining DOJ from seeking, demanding, receiving, or using PHI responsive to Requests 11–13 (or materially identical PHI requests, however captioned) from any healthcare provider or custodian of pediatric medical records, regardless of whether the recipient is formally designated a "children's hospital" under federal law; requiring sequestration and non-use of any such PHI already obtained; and requiring DOJ to provide at least seven days' advance notice to class counsel—and to refrain from receiving or reviewing any such PHI during that period—before any enforcement petition or other production demand.

### CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court grant their Motions for Class Certification, to Quash Requests 11–13, and for Preliminary Injunction in its entirety.

Dated: May 8, 2026                          /s/ Eve L. Hill
                                            Eve L. Hill (Bar No. 424896)
                                            BROWN GOLDSTEIN & LEVY, LLP
                                            120 E. Baltimore St., Suite 2500
                                            Baltimore, MD 21202
                                            Tel: (410) 962-1030
                                            Fax: (410) 385-0869
                                            ehill@browngold.com

                                            Joshua D. Rovenger (*pro hac vice* motion
                                            forthcoming)
                                            Donovan C. Bendana (*pro hac vice* motion
                                            forthcoming)
                                            GLBTQ LEGAL ADVOCATES & DEFENDERS
                                            (GLAD LAW)
                                            18 Tremont Street, Suite 950
                                            Boston, MA 02108
                                            (617) 426-1350
                                            jrovenger@gladlaw.org
                                            dbendana@gladlaw.org

                                            Shannon Minter (*pro hac vice* motion forthcoming)
                                            Rachel Berg (*pro hac vice* motion forthcoming)
                                            NATIONAL CENTER FOR
                                            LGBTQ RIGHTS
                                            1401 21st Street # 11548
                                            Sacramento, California 95811
                                            (415) 365-1338
                                            sminter@nclrights.org
                                            rberg@nclrights.org

                                            *Attorneys for Movants*

31