**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

| | |
|---|---|
| In re: Administrative Subpoenas to Children's Hospitals | Case No. 1:26-cv-1834-JRR |

**UNITED STATES' RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION, TO QUASH, AND FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................... 2

    I.    DOJ's Investigation. .......................................................................................... 2

    II.   July 2025 Subpoenas.......................................................................................... 3

    III.   Present Case. ....................................................................................................... 5

ARGUMENT....................................................................................................................... 6

    I.    Rule 45 Does Not Authorize Nationwide or "Classwide" Quashal. ................... 6

    II.   Without Certification, the Court can Award Relief Only to Parties Before the Court. ....... 9

    III.   Movants Fail to Meet Rule 23 Standards.................................................... 12

        A.   Movants fail to ascertain proposed class members and requests this Court to issue an order superseding litigation in other districts......................................................... 13

        B.   Movants fail under Rule 23(a) because there are no typicality, commonality and adequacy of representation. ............................................................................. 14

        C.   Movants do not meet requirements of Rule 23(b)(2) because there is no "common answer."................................................................................................................ 19

    IV.  The Court Should Deny the Motion for a Preliminary Injunction................................. 21

        A.   Plaintiffs lack a likelihood of success on the merits. ..................................... 23

        B.   Movants will not suffer irreparable harm during the pendency of this lawsuit............ 27

        C.   The balance of the equities and the public interest weight in the Department's favor. 27

**INTRODUCTION**

The Department of Justice ("Department" or "DOJ") has long held statutory authority to investigate and prosecute violations of the nation's drug and healthcare laws. That authority is broad, well-established and regularly exercised. This case arises from one such investigation.

In a preceding action, plaintiffs unsuccessfully sought to quash the entire subpoena served on Children's National Medical Center ("CNMC"). Undeterred by this Court's reluctance to quash the entire subpoena, Movants—patients of four hospitals that have received subpoenas as a part of the DOJ's investigation—come to this Court seeking to represent a nationwide class and asking for relief that would prevent the DOJ from exercising its statutory authority to investigate potential violations of law across the country. And remarkably, these breathtaking demands have been made in the posture of a miscellaneous action that asserts no cause of action against Defendant. Indeed, Movants have not even bothered to file a complaint.

The Court should deny Movants' unprecedented and unsupported request to collaterally attack all of DOJ's current and future investigatory efforts in this space. Neither Rule 45 nor 18 U.S.C. § 3486 authorizes prospective or "classwide" quashal of subpoenas with no connection to this district. In any event, classwide relief is available only after certification, and this putative class—which includes patients in different situations and with different interests—has *no* chance of being certified.

Movants' request for preliminary injunctive relief also fails at the threshold. A cause of action is a prerequisite to injunctive relief in federal court. Yet Movants have merely filed a motion in a subpoena matter, and they have not even attempted to assert a cause of action against Defendant (much less follow the rest of Rule 8). Even if a preliminary injunction could somehow be obtained in this posture, Movants have not met their burden to show entitlement to classwide injunctive relief. Movants are unlikely to succeed on the merits (including because they have no

1

claim), and further fail to persuade that each and every member of the putative class is facing the imminent and irreparable harm necessary for an injunction.

Movants seek extraordinary relief in an unusual posture but present this Court with a case that is meritless from top to bottom. Relief is therefore unwarranted.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    DOJ's Investigation.

This case concerns an investigation into the off-label prescription and provision of certain drugs to minors with gender dysphoria. These include prescription drugs that suppress the production of sex hormones to delay puberty (commonly referred to as "puberty blockers") and cross-sex hormones meant to induce physical changes to alter the child's secondary sexual characteristics to resemble those typically seen in the opposite sex and less like the individual's biological sex. *See United States v. Skrmetti*, 605 U.S. 495, 503-04 (2025) (describing use of these drugs). Although these drugs are approved by the Food and Drug Administration (FDA) for some uses, FDA has not determined that any of these drugs are safe or effective for the treatment of gender dysphoria, nor has FDA approved any of these prescription drugs for the treatment of gender dysphoria or any other psychiatric disorder.

One focus of the Department's investigation is potential violations of the Food, Drug, and Cosmetic Act (FDCA). The FDCA generally prohibits "misbranding" a drug. *See* 21 U.S.C. §§ 331(a)-(c), (k); 352. A drug may be misbranded if, among other things, its labeling is false or misleading, *id.* § 352(a), or if its labeling does not bear adequate directions for its intended use, *id.* § 352(f)(1). "Intended use[]" means the "objective intent of the persons legally responsible for the labeling of an article (or their representatives)." 21 C.F.R. § 201.128. Such intent "may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives." *Id.* And the "intended uses of an article may change after it has

2

been introduced into interstate commerce by its manufacturer." *Id.* If, for example, a seller "intends an article for different uses than those intended by the person from whom he or she received the article," then the "seller is required to supply adequate labeling in accordance with the new intended uses." *Id.*

Under the FDCA, drug labeling is broadly defined to include any "written, printed, or graphic matter … accompanying" the drug. 21 U.S.C. § 321(m). The term "accompanying" includes materials that are separate from but related to the drug and any material that supplements, explains, or is designed for use with the drug. *See id.* § 321(m); 21 C.F.R. § 1.3(a); *Kordel v. United States*, 335 U.S. 345, 349-50 (1948); *United States v. Urbuteit*, 335 U.S. 355, 357 (1948); *United States v. 47 Bottles*, *More or Less, Etc.*, 320 F.2d 564, 569 (3d Cir. 1963). Labeling can include promotional materials, advertisements, brochures, flyers, instruction sheets, posters, and similar materials.

Misdemeanor violations of the FDCA are punishable on a strict liability basis, without any proof of criminal intent. *See* 21 U.S.C. § 331, § 333(a)(1); *United States v. Wiesenfeld Warehouse Co.*, 376 U.S. 86, 91 (1964). For example, if a drug manufacturer or other person causes the distribution of an approved drug for an unapproved use, the manufacturer or other person could be charged with misbranding the drug or distributing a drug with labeling that lacks adequate directions for its intended uses. 21 U.S.C. §§ 331(a)–(c), (k), 352(f)(1). Where a violator has an intent to defraud or mislead, an FDCA violation may be punishable as a felony. *Id.* § 333(a)(2).

## II.    July 2025 Subpoenas.

In the investigation of a "Federal health care offense[,]" HIPAA permits the Attorney General to issue a subpoena. 18 U.S.C. § 3486(a)(1)(A)(i)(I). A federal health care offense includes a "violation of, or a criminal conspiracy to violate" 21 U.S.C. § 331, "if the violation or conspiracy relates to a health care benefit program," 18 U.S.C. § 24(a)(2). And a "health care

benefit program" is "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." *Id.* § 24(b).

Pursuant to this authority, as a part of its investigation into potential violations of the FDCA, the DOJ issued in July 2025 more than 20 subpoenas to doctors and clinics, including Children's National Medical Center (CNMC), Connecticut Children's Medical Center (Connecticut Children's), Michigan Medicine, and Rady Children's Hospital (Rady). *See* 18 U.S.C. § 3486(a). As is often the case in investigations like this one, the subpoena requests, among other things, patient records and related information:

> Request 11: "Documents sufficient to identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy."

> Request 12: "For each such patient identified in Subpoena [Request 11], documents relating to the clinical indications, diagnoses, or assessments that formed the basis for prescribing puberty blockers or hormone therapy."

> Request 13: "All documents relating to informed consent, patient intake, and parent or guardian authorization for minor patients identified in [Request 11], including any disclosures about off-label use (i.e., uses not approved by the United States Food and Drug Administration) and potential risks."

ECF 1-1 (Mot.).

CNMC did not challenge the subpoena. Instead, eight families who were patients of CNMC moved to quash it. *In re 2025 Subpoena to Children's Nat'l Hosp.*, No. 1:25-cv-03780 (D. Md.). The families argued that the subpoena lacked proper investigatory basis and was instead issued for the improper purpose of ending the practice of prescribing puberty blockers and cross-sex hormones to minors. Crucially, the movants sought not only relief for themselves, but a wholesale quashal on behalf of every patient of CNMC. The Court declined to go so far. In its opinion, the Court was unambiguous: "movants have not persuaded the court that they have standing to raise

the matter for persons not parties before the court." *In re Children's Nat'l Hosp.*, No. 1:25-CV-03780-JRR, 2026 WL 160792, at *9 (D. Md. Jan. 21, 2026). The ruling therefore addressed the named movants and only them. *Id.*

### III.    Present Case.

Unsatisfied with a ruling that resolved only the claims of those who actually appeared before the court, a putative class now attempts to accomplish through Rule 23 what the prior movants could not accomplish through a motion to quash: a sweeping injunction against the Department's investigation. Movants—"11 families who received transgender healthcare, for either themselves or their children," through CNMC, Connecticut Children's, Michigan Medicine, or Rady, "from January 1, 2020, to the present," initiated this case by filing a motion requesting three things. *See* (Mot.); ECF 1-2 (Mem.).

*First*, Movants seek certification of a class defined as

> all minors, along with their parents or guardians, whose personal health information (PHI) or identifying information is subject, now or in the future, to compelled disclosure under a DOJ subpoena issued under 18 U.S.C. § 3486 as part of DOJ's national investigation into the distribution of certain prescription drugs to minors with gender dysphoria and related disorders seeking records or other PHI relating to transgender healthcare, including but not limited to patient-identifying information, parent/guardian information, clinical records, and informed-consent, intake, and parent or guardian authorization materials, and served on any healthcare provider or custodian of pediatric medical records, regardless of whether the recipient is formally designated a "children's hospital" under federal law.'

Mem. at 10.

*Second*, Movants seek to "[q]uash, under [Rule] 45(d)(3)(A) and 18 U.S.C. § 3486, Requests 11-13 (and any materially identical PHI requests, however captioned) in each § 3486 [administrative] subpoena identified in the class definition . . . and any further such subpoena issued during the pendency of this action." Mem. 30.

*Third*, Movants seek a preliminary injunction against DOJ. They request an order (1) "enjoining DOJ from seeking, demanding, receiving, or using PHI responsive to Requests 11-13 (or materially identical PHI requests, however captioned) from any healthcare provider or custodian of pediatric medical records"; (2) "requiring sequestration and non-use of any such PHI already obtained"; and (3) "requiring DOJ to provide at least seven days' advance notice to class counsel—and to refrain from receiving or reviewing any such PHI during that period—before any enforcement petition or production demand." Mem. 30.

The Court should deny all three requests.

## ARGUMENT

### I.    Rule 45 Does Not Authorize Nationwide or "Classwide" Quashal.

Movants do not point to a single case in which an unknown group of current and future subpoena requests to a group of unknown, unknowable individuals and institutions has been quashed under any cognizable legal theory. But even if a class could be certified and even if Rule 45 applies, Rule 45 does not permit "classwide" quashal, prospective quashal, or universal quashal of subpoenas with no connection to this district. Rule 45 is subpoena-specific and authorizes only "the court for the district where compliance is required" to adjudicate disputes. Fed. R. Civ. P. 45(d)(3)(A), (B).[1] And because Movants have not even attempted to bring a procedurally proper or cognizable claim (and thus have no freestanding cause of action available to them or the putative

---

[1]    For process issued under § 3486, the government maintains that Rule 45 does not apply. At the least, Rule 45 cannot override the more specific provisions governing quashal actions set out by the statute. Fed. R. Civ. P. 81(a)(5) (federal civil rules apply to proceedings involving subpoena "except as otherwise provided by statute"). Thus, the putative class lacks statutory standing to seek quashal under § 3486 because it seeks to challenge subpoenas issued (or that may be issued) to third parties. *See* 18 U.S.C. § 3486(d)(5) (permitting "the person or entity summoned" to seek quashal or modification). Further, for those subpoenas in which the return date has already passed, any motion to quash is untimely. *See id.* (permitting challenges "[a]t any time before the return date specified in the summons"). Although the United States recognizes that this Court previously concluded otherwise, *see* 2026 WL 160792 at *5, it has appealed that order and maintains that § 3486 precludes untimely challenges by non-recipients, notwithstanding Rules 45 and 81. Thus, a putative class comprised of parents and patients lack statutory standing to collaterally attack subpoenas "served on any health care provider or custodian of pediatric medical records[.]" Mot. at 4.

6

class), no other principle of law or equity plausibly supports the unprecedented and extraordinary relief so hastily requested here.

Movants attempt to rely on Rule 45(d), but Rule 45 is subpoena-specific and venue-conscious. It does not authorize the Court to quash subpoenas that are not before it, much less to enter prospective relief nullifying an entire category of subpoenas that Congress has expressly authorized the Department to issue under § 3486. Rule 45 provides that, "[o]n timely motion," "*the court for the district where compliance is required*" is authorized to quash or modify "*a subpoena*" with certain specified defects. Fed. R. Civ. P. 45(d)(3)(A) (emphasis added). That text contemplates discrete challenges to identifiable subpoenas, brought in the proper venue—not a centralized proceeding to superintend a nationwide investigation under the guise of a motion to quash. The same is true of § 3486, which provides that "[a]t any time before the return date specified in the summons, the person or entity summoned may, in the United States district court for the district in which that person or entity does business or resides" petition for quashal. 18 U.S.C. § 3486(d)(5). Rule 45's grounds for quashal are also subpoena-specific. Whether "a subpoena" fails to allow reasonable time for compliance, exceeds geographical limits, requires disclosure of privileged or protected matter, or otherwise imposes an undue burden, *see* Rule 45(d)(3)(A)(i)-(iv), cannot be adjudicated in the abstract; courts must consider a particular subpoena's specifications and the surrounding facts and circumstances.

Movants' request for universal quashal therefore squarely conflicts with Rule 45's deliberate allocation of authority to "the court for the district where compliance is required," Fed. R. Civ. P. 45(d)(3)(A), as well as § 3486's related channeling of quashal actions to the "district court for the district in which th[e subpoenaed] person or entity does business or resides[.]" 18 U.S.C. § 3486(d)(5); *see also, e.g.*, *Pizana v. Basic Rsch., LLC*, No. 1:18-cv-00644-DAD-SKO, 2022 WL 1693317, at *2 (E.D. Cal. May 26, 2022) (collecting cases and noting that "a majority

of federal courts agree that the 'district where compliance is required' is the place of compliance named in the subpoena"); *Bunn v. Dash*, No. 2:20-cv-07389-DMG-JC, 2021 WL 4868361, at *2 (C.D. Cal. July 22, 2021) (finding no jurisdiction "to entertain [a] challenge to [a] Subpoena under Rule 45" where Boston, Massachusetts was listed as the place for compliance); *Uniloc USA, Inc. v. Apple Inc.*, No. 19-cv-01692-EJD (VKD), 2020 WL 6262349, at *2 (N.D. Cal. Oct. 23, 2020) (holding that "place where compliance is required" was district named on the face of the subpoena, "even if that place of compliance is not proper under Rule 45(c)").

Movants offer no reason why this Court can disregard those textual requirements that subpoena disputes be resolved by the court with territorial connection to the investigation or compliance obligation. Nor does anything else in Rule 45 or § 3486 suggest those provisions function as something other than a mechanism to challenge a discrete, existing subpoena in the proper venue. It is unsurprising, then, that Movants have failed to identify a single decision in which a court has granted relief similar to that requested here—under the auspices of Rule 45 or otherwise. The decisions they do cite—*Peters v. United States*, 853 F.2d 692 (9th Cir. 1988) and *In re Subpoena of Internet Subscribers of Cox Commc'ns LLC*, 148 F.4th 1056 (9th Cir. 2025)— are plainly inapt, as each concerned a discrete challenge to a single subpoena. Indeed, those decisions do not even cite Rule 45. The Rule 45 framework simply does not map onto Movants' procedurally bizarre request.

At a minimum, Rule 45 cannot justify prospective quashal of subpoenas or other compulsory process that may be issued "in the future[.]" *See* Mot. at 3. To "quash" is to nullify compulsory process that already exists. If any prospective relief is available to Movants, it must sound in equity—not Rule 45. And as explained below, Movants have no cause of action to seek a prospective injunction regulating DOJ's investigative authority.

Insofar as Movants invoke Rule 23 as a substitute for standing or a cognizable cause of action, that argument fails. Rule 23 is merely a procedural device for aggregating and adjudicating claims that otherwise exist; it cannot be bootstrapped into a source of authority to quash subpoenas issued to nonparty hospitals in other districts, let alone subpoenas (or similar process) that have not yet issued. Nor can it be construed to do so without running headlong into the Rules Enabling Act, which "forbids interpreting Rule 23 to 'abridge, enlarge, or modify any substantive right[.]'" *Wal-Mart Stores, Inc v. Dukes*, 564 U.S. 338, 367 (2011) (quoting 28 U.S.C. § 2072(b)). Rule 23 may define when existing claims may proceed on a representative basis, but it does not permit courts to manufacture novel remedies in the absence of a cognizable underlying cause of action.

## II.      Without Certification, the Court can Award Relief Only to Parties Before the Court.

Article III of the Constitution, along with the Judiciary Act of 1789, confers only "narrow authority" on federal courts. *In re 2025 Subpoena to Children's National Hospital*, 25-cv-3780 (D. Md. May 4, 2025) (Dkt. 34 at 5 n.4). With this authority, a federal court "generally may administer complete relief *between the parties*." *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025) (quotation omitted). But a federal court errs when it issues relief "to *everyone* potentially affected by an allegedly unlawful act[,]" regardless of their party-status. *Id.* at 852.

Movants' requested injunction runs afoul of this basic principle. When a class is certified in accord with Rule 23, class members are bound by a resulting judgment. *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 379 (1996) ("[U]nder Federal Rule of Civil Procedure 23, all members of the class, whether of a plaintiff or a defendant class, are bound by the judgment entered in the action[.]"). But before certification, putative class members are nonparties. And they are accordingly not bound by any resulting judgment. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("Neither a proposed class action nor a rejected class action may bind nonparties."); *id.* at 316 n.11 ("The great weight of scholarly authority—from the Restatement of Judgments to the

9

American Law Institute to Wright and Miller—agrees that an uncertified class action cannot bind proposed class members.").

When viewed in this light, it becomes clear that a remedy awarding relief to members of a conditionally certified class is a remedy that awards relief to non-parties. *CASA* is unequivocal that this exceeds "the maximum a court can provide." 606 U.S. at 854. And just like a universal injunction, a conditional-class-injunction circumvents "Rule 23's procedural protections and allow[s] courts to create *de facto* class actions at will[.]" *Id.* at 849 (quotation omitted). Also, conditional-class-injunctions are plagued by the same asymmetry problems that "equity abhors." Elias Neibart, *The Rise of the All-Writs-Act-Putative-Class-Injunction?*, 77 Baylor L. Rev. 681, 705 (2025). A party that is denied a preliminary injunction is generally collaterally estopped from seeking the same relief elsewhere. *See id.* at 690 n.50. But as a non-party, a putative class member does not face that same barrier. If, however, a putative class is granted a preliminary injunction, the Department has no option other than an appeal. The universal injunction presented a similar issue. *See CASA*, 606 U.S. at 855. But a *certified* class action does not. *See id.* at 855 n.15. Finally, like the universal injunction, there is no basis to conclude that the conditional-class-injunction is "sufficiently 'analogous' to the relief issued 'by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act.'" *Id.* at 841-42 (quoting *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999)). "Decrees obtained on a bill of peace"—the historic analog to today's class action— "would bind all members of the group[.]" *Id.* at 848 (quotation omitted). And as discussed above, that is not true with respect to a putative class action.[2]

---

[2]    Additionally, doubts exist "as to whether decrees obtained on a bill of peace could be for preliminary relief." Neibart, *The Rise of the All-Writs-Act-Putative-Class-Injunction?*, 77 Baylor L. Rev. at 693 n.62; *see, e.g.*, *Rodgers v. Bryant*, 942 F.3d 451, 465 (8th Cir. 2019) (Stras, J., concurring in part and dissenting in part). Although the Court need not address this issue to deny the motion for a preliminary injunction, these doubts illustrate how far afield of history Movants' request is.

To be sure, the Supreme Court once authorized temporary relief for a putative class. *See AARP v. Trump*, 605 U.S. 91 (2025). But there, the "temporary injunctive relief to the putative class" was necessary "in order to preserve [the Court's] jurisdiction pending appeal." *Id.* at 97. No such issue is present here. *Cf. Tincher v. Noem*, 164 F.4th 1097, 1099 (8th Cir. 2026). Also, the propriety of such injunctions was not before the Court, counseling against reliance in future cases. *Cf. Nat'l Lab. Rels. Bd. v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 408 (4th Cir. 2022) ("Drive-by jurisdictional rulings are not precedential. (alteration adopted) (quotation omitted)). And *AARP* was decided before *CASA* made clear that relief to non-parties is beyond what a federal court can provide. For these reasons, this Court should not read *AARP* to authorize the injunction Movants request here. Indeed, in other non-habeas civil cases in which the court did not risk losing jurisdiction, courts have rejected awarding preliminary injunctive relief before the class is fully certified. *See e.g., Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 356 (D. Mass. 2011) ("[I]ssuing a preliminary injunction that would apply to the entire putative class would be premature").

In sum, the injunction requested here and the injunctions at issue in *CASA* suffer from the same essential flaw—they give relief to non-parties. Movants' request that this Court now enter a preliminary injunction regarding a Rule 23(b)(2) class is therefore inappropriate. Instead, any such remedy must wait until after this Court conducts the "rigorous analysis" that Rule 23 requires. *Dukes*, 564 U.S. at 351 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)); *see, e.g., Doctor v. Seaboard Coast Line R. Co.*, 540 F.2d 699, 707 (4th Cir. 1976) ("The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential as a part of the vital management role which the trial judge must exercise in class actions to assure that they are both meaningful and manageable."); *Yates v. Newrez*, LLC, No. 8:21-CV-3044-TDC, 2022 WL 2105933, at *4 (D. Md.

June 10, 2022) ("[D]iscovery regarding injuries to class members is relevant even if a class has yet to be certified; in fact, it is often necessary to determine whether a class should be certified."). And, for the reasons to follow, Movants' motion for class certification cannot bear that scrutiny.

### III.    Movants Fail to Meet Rule 23 Standards.

A class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). To fall within this exception, a plaintiff "must affirmatively demonstrate his compliance" with Rule 23. *Dukes*, 564 U.S. at 350. As the Supreme Court has explained, "Rule 23 does not set forth a mere pleading standard." *Id.* Instead, a "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* And "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]'" *Id.* at 350-51 (quoting *Falcon*, 457 U.S. at 161); *see Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004).

To meet their burden, Movants must demonstrate the existence of each and every element required by Rule 23(a) that: (1) there are sufficiently numerous parties ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the named plaintiff are typical of those of the class ("typicality"); and (4) the named plaintiff will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable." *Falcon*, 457 U.S. at 160. The proposed class must also "satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345. Movants here assert that their class should proceed under Rule 23(b)(2), which permits class action litigation where "the party opposing the class has acted ... on grounds that apply generally to the

12

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

### A. Movants fail to ascertain proposed class members and requests this Court to issue an order superseding litigation in other districts.

The Fourth Circuit has long required that the members of a proposed class be "readily identifiable." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). Under this line of precedent, a class cannot be certified unless a court can readily identify the class members in reference to objective criteria. *Id.* Movants need not be able to identify every class member at the time of certification, but "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)).

Recently, though, the Fourth Circuit concluded that ascertainability was not a requirement in the context of a Rule 23(b)(2) case seeking "declaratory and injunctive relief from a discriminatory policy." *Kadel v. Folwell*, 100 F.4th 122, 161 (4th Cir. 2024), *cert. granted, judgment vacated sub nom. Crouch v. Anderson*, 145 S. Ct. 2835 (2025), and *cert. granted, judgment vacated, Folwell v. Kadel,* 145 S. Ct. 2838 (2025). Perhaps as a sign that Movants understand this case to be different—the correct conclusion considering that they seek relief that is neither declaratory nor injunctive and ask the Court to review not only existing governmental action but also hypothetical subpoenas that the Department could issue—Movants devote a page of their briefing to ascertainability. *See* Mem. at 14–15. Although Movants are correct that ascertainability is needed, they are wrong that it is satisfied.

For one, the class definition offered by Movants reaches forward in time—"now or in the future" (Mem. at 10)—which creates an inherently open-ended membership question that does not satisfy *EQT*. Movants provide no "objective criteria" to determine the subset of minors whose PHI could be subpoenaed in the "future." Without more, those bound by final judgment will not be

"clearly identifiable." *Marcus*, 687 F.3d at 593; *see Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ("Ascertainability is needed for properly enforcing the preclusive effect of final judgment. The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss. If the definition is not clear in its applicability, then satellite litigation will be invited over who was in the class in the first place.").

The proposed class is not ascertainable because a "mini trial" would be required to determine whether a given patient's records are "subject to compelled disclosure." Mem. at 15. This is both a legal and factual question that is currently in different litigation postures throughout the United States. And in the light of this current litigation, the answer to this question will require individualized inquiries for each putative class member. It will also put the Court in the position of reviewing the work of its sister courts, which is at odds with basic notions of judicial comity. *See In re McBryde*, 117 F.3d 208, 225 n.11 (5th Cir. 1997) ("[T]he structure of the federal courts does not allow one judge of a district court to rule directly on the legality of another district judge's judicial acts or to deny another district judge his or her lawful jurisdiction." (quotation omitted)).

For these reasons, the Court should conclude that ascertainability is lacking.

**B. Movants fail under Rule 23(a) because there are no typicality, commonality and adequacy of representation.**

### 1. *Movants fail to affirmatively show commonality.*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." This subsection requires a common question among class members "where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration in the original) (quotation omitted); *accord Dukes*, 564 U.S. at 350 (explaining, for commonality purposes, that class members' claims must "depend upon a common contention" and that

14

contention "must be of such a nature that it is capable of classwide resolution"). In other words, commonality "requires the plaintiff to demonstrate that the class members have suffered [or will soon suffer] the same injury[.]" *Dukes*, 564 U.S. at 350.

Movants argue that commonality is present because "[e]very class member faces the same harm from the same PHI demands[,]" and DOJ's conduct has been uniform across proceedings thus far, meaning that nothing unique to any specific patient or hospital "will have any bearing on the resolution of this case." Mem. at 11-12.

This commonality contention fails to persuade because Movants fail to present any issue capable of classwide resolution in "one stroke." *Dukes*, 564 U.S. at 350. For one, even assuming a privacy interest sometimes allows a non-recipient to challenge a subpoena on the grounds that Movants raise, Movants fail to substantiate their argument that the entire class shares the same privacy interest in the requested records. *Cf. Doe v. Luzerne Cnty.*, 660 F.3d 169, 176 (3d Cir. 2011) ("Privacy claims under the Fourteenth Amendment necessarily require fact-intensive and context-specific analyses, and unfortunately, bright lines generally cannot be drawn."). Also, each subpoena was served on a different provider with different records, where some providers complied in full or in part, and some settled. This creates different legal postures (and different questions) for different members of the class. And finally, Movants fail to explain how any subpoena issued "in the future" under 18 U.S.C. § 3486—a statute that allows for the issuance of a subpoena "[i]n any investigation of . . . a Federal health care offense"—will give rise to the same issues and alleged injuries that the already-issued subpoenas do. As a result, Movants fail to convince that the Court can provide a "common answer[]" covering existing, hypothetical, and potential future subpoenas. *Dukes*, 564 U.S. at 350 (quotation omitted). Commonality is therefore lacking.

15

### 2. *Movants fail to affirmatively show that their claim is typical to the class members.*

A class representative's claims must be "typical of the claims … of the class[.]" Fed. R. Civ. P. 23(a)(3). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (quotation omitted). Although typicality does not require perfect alignment between the "the plaintiff's claim and the claims of class members, the Fourth Circuit has "readily denied class certification" when "the variation in claims strikes at the heart of the respective causes of actions[.]" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006).

Movants' argument on typicality rests on the claim that both the Movants and the putative class members "challenge the same PHI demands on the same legal grounds as the rest of the class and seek the same prospective relief," meaning that "[n]o individual defenses or case-specific facts threaten to overwhelm the class's shared claims." Mem. at 13.

Not so. The named movants are patients of CNMC, Connecticut Children's, Michigan Medicine, and Rady's. *See* Mot at 1. There are distinct differences between the legal posture of these subpoenas—with only CNMC's subpoena being quashed in part and the rest remaining unchallenged—and the legal posture of other subpoenas. Indeed, some hospitals have complied and produced records, some subpoenas are the subject of active litigation in other districts and circuits, and other subpoenas have been withdrawn pursuant to settlement agreements. These differences translate to differences in potential claims. For example, given the enforcement order in the Northern District of Texas, one that this Court cannot review, a material variation exists between the claims of patients of Rhode Island Hospital and the Movants' claims.

Also, like with commonality, typicality is lacking in the light of the class definition's inclusion of minors whose PHI could, "in the future," be subject to "compelled disclosure" under

16

any HIPAA subpoena issued as a part of the Department's investigation. Before knowing what such a subpoena would look like and ask for, Movants cannot reasonably contend that the claims arising from any future subpoena would rise and fall with Movants' claims. Put differently, Movants fail to convince that the claims of these members of the putative class "go" with Movants' claims. *Broussard*, 155 F.3d at 340. Typicality is therefore missing.

### 3. Movants fail to affirmatively show that the putative class members will be adequately represented.

The adequacy requirement of Rule 23 is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine adequacy, the Court must consider whether there are "conflicts of interest between named parties and the class they seek to represent, and whether the named parties "possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625 (quotation omitted). "The adequacy heading also factors in competency and conflicts of class counsel." *Id.* at 626 n.20.

Movants fail to prove adequacy. Movants want to represent the class while proceeding under pseudonyms. *See* ECF 2. Courts have expressed "concerns about the prospect of a pseudonymous plaintiff acting as a class representative." *Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 649 (D.N.H. 2020). This is because of, among other things, "the important role class representatives play as the public face of the class action." *Id.*; *see also J.R. v. Atrium Health, Inc.*, No. 3:24-CV-00382-KDB-SCR, 2024 WL 3032890, at *1 n.4 (W.D.N.C. June 17, 2024) ("[S]ome out-of-circuit courts have not permitted class representatives to proceed pseudonymously in litigation because it hampers the evaluation of the class representatives' ability to represent the entire class."). Pseudonymity makes it "unclear how [p]laintiffs [can] satisfy their burden to show adequacy when they are unknown or how they would evaluate potential conflicts with other class members." *Doe (1) v. Univ. of Kan. Hosp. Auth.*, No. 2:25-CV-02200-HLT-TJJ, 2025 WL 1634958, at *4 (D. Kan. June 9, 2025); *see also Sherman v. Trinity Teen Sols., Inc.*, 339 F.R.D. 203, 206 (D.

17

Wyo. 2021) ("Plaintiff's role as the class representative in this case also weighs in favor of an open proceeding. If Plaintiff proceeds under a pseudonym, it will be difficult to ascertain if Plaintiff and his counsel can fairly and adequately protect the interests of the class."); *In re Ashley Madison Customer Data Sec. Breach Litig.*, 2016 WL 1366616, at *4–5 (E.D. Mo. Apr. 6, 2016) (ruling that plaintiffs could not proceed pseudonymously as class representatives because the class members and public had interest in knowing who was guiding and directing the litigation).

Even assuming anonymity does not prevent adequacy finding, a conflict of interest exists between Movants and other members of the proposed class. The proposed class includes a number of parties that disagree with Movants on the merits of "gender-affirming care" and thus support the Department's investigation. It follows that, without more, the Court cannot conclude that Movants "possess the same interest and suffer the same injury" as the proposed class members, *Amchem*, 521 U.S. at 626 (quotation omitted), and that the proposed class is conflict-free, *cf., e.g.*, *Kim v. Allison*, 87 F.4th 994, 1000–01 (9th Cir. 2023) (finding a conflict of interest when, "by maximizing their own interests, the putative representatives . . . would necessarily undercut the interests of another portion of the class"). Also, given that the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a)," the issues preventing findings of commonality and typically—especially with respect to putative class members that could be affected by hypothetical HIPAA subpoenas in the future—also demonstrate that "the named plaintiff's claim and the class claims are [not] so interrelated," and "that the interests of the class members will [not] be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20.

Movants' arguments in favor of adequacy fail to convince. Movants claim that, because their requested prospective relief would "operate identically for every class member," there is "no basis to anticipate intraclass conflicts, and no member has an interest adverse to any other in

18

obtaining it." Mem. at 13-14. This *ipse dixit*—especially when known putative class members disagree with Movants' evaluation of the Department's investigation—does not cut it. *Cf. Dukes*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard.").

Movants relegate their entire pseudonymity argument to but a footnote. Mem. at 14 n.15. But the one case Movants rely on is distinguishable. In *CASA, Inc. v. Trump*, the court concluded that "the class representatives, despite proceeding pseudonymously, will adequately represent the interests of the absent class members" because the requested "relief [would] benefit[] class representatives and class members alike." 793 F. Supp. 3d 703, 724 (D. Md. 2025); *see id.* at 725 ("[A]nonymity will not discourage the class representatives from vigorously prosecuting the class's interests because their interests are identical."). Here, on the other hand, the requested relief would not benefit proposed class members who have already publicly disclosed their patient status, as well as those who have publicly supported investigations like the Department's.

For these reasons, Plaintiffs have not met Rule 23(a)(4)'s adequacy requirement.

### C. Movants do not meet requirements of Rule 23(b)(2) because there is no "common answer."

Under Rule 23(b)(2), Movants must show that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted--the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (citation omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

That standard is not met here. Movants' argument to the contrary is based on the proposition that "DOJ unlawfully seeks the same information as to each and every one of these

19

putative class members." Mem. at 16. But, as explained above, Movant seeks relief with respect to both subpoenas in existence now and subpoenas that could exist in the future. Without knowing if such hypothetical subpoenas will ever issue and without knowing their content, it cannot be said that a single, indivisible remedy is warranted. This is especially true because the putative class members affected by such hypothetical subpoenas lack standing to seek prospective relief. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) ("[T]hreatened injury must be certainly impending to constitute injury in fact."). Also, although uniform in their requests, the different legal postures of the subpoenas currently in existence weigh against certification. For example, because this Court cannot enter relief with respect to subpoenas subject to litigation in other jurisdictions, a single remedy is not available with respect to both subpoenas on appeal in other circuits and subpoenas that have not been challenged. A Rule 23(b)(2) class action is therefore unavailable. *See, e.g.*, *Farley v. Lincoln Benefit Life Co.*, 150 F.4th 1197, 1205 (9th Cir. 2025) (reversing an order certifying a Rule 23(b)(2) class when some class members are "not entitled to relief and, at the very least, would not benefit from the requested injunction").

Movants' pursuit of a Rule 23(b)(2) class also fails for another reason. Despite Movants' claims to the contrary, quashal is neither injunctive nor "corresponding" declaratory relief. Unlike an injunction, quashal does not "direct[] recipients not to produce records." Mem. at 17. And unlike "corresponding" declaratory relief, quashal does not, "as a practical matter," "afford[] injunctive relief or serve[] as a basis for later injunctive relief." *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 595 (4th Cir. 1976) (quotation omitted). Rather than operating on a party, quashal operates on the subpoena. *See, e.g.*, *In re Mfrs. Trading Corp.*, 194 F.2d 948, 953 (6th Cir. 1952) ("A motion to quash a subpoena duces tecum is only a motion to set aside process."); *Hartnett v. Hardenbergh*, No. 3:23-CV-17-HEH, 2024 WL 310193, at *2 (E.D. Va. Jan. 26, 2024) (recognizing that "Motions to Quash … could potentially nullify the subpoenas issued"); *Landry*

20

*v. GMAC Mortg.*, No. CV H-12-0014, 2012 WL 12903540, at *1 n.2 (S.D. Tex. Aug. 15, 2012) ("[A] [m]otion to quash is used to annul or void a proceeding, for example, a subpoena."), *report and recommendation adopted*, No. CV H-12-14, 2012 WL 12903541 (S.D. Tex. Sept. 17, 2012). Given this key distinction, it is no surprise that Plaintiff fails to cite a single Rule 23(b)(2) case in this context. Without any such support, this Court should not certify a class along the lines that Movants propose.

*   *   *

For the reasons above, the Court should deny the motion for class certification.

### IV.    The Court Should Deny the Motion for a Preliminary Injunction.

Movants demand a sweeping injunction prohibiting the Department from "seeking, demanding, receiving, or using PHI responsive to Requests 11–13 (or materially identical PHI requests, however captioned)," "requiring sequestration and non-use of any such PHI already obtained," and "requiring at least seven days' advance notice to class counsel before any enforcement petition[.]" Mot. at 5. This request is as unprecedented as it is baseless.

Movants cannot seek injunctive relief against the Department for the basic reason that they lack a cause of action. Movants' have filed a motion in a subpoena matter—not a complaint asserting a cause of action for final classwide injunctive relief. Indeed, their papers do not even attempt to identify a claim or cause of action asserted against the Department. The motion for preliminary injunction thus must be denied at the threshold. A cause of action is a prerequisite to injunctive relief in federal court. *See, e.g.*, *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir. 1978) (injunctive relief must be "based on a valid cause of action alleged in the complaint"); *see Findlay v. McAllister*, 113 U.S. 104, 115 (1885) ("Unless the plaintiff has a cause of action against the defendants, he is without remedy."). At a minimum, Movants lack one against DOJ in this posture. Even if claims could be asserted through motions, and even if Rule 45 or § 3486 permitted

21

third parties to seek quashal of subpoenas implicating their interests, neither creates a freestanding right of action to seek prospective supervision of an agency's subpoena practices.[3]

Movants' suggestion that preliminary injunctive relief is available "to [p]reserve the [s]tatus [q]uo" while the Court considers their Rule 45 motion fares worse. Mem. at 24. A preliminary injunction serves to preserve the court's ability to grant effective ultimate relief on a claim, not to award substantive relief that is unavailable at the conclusion of the proceeding. *See, e.g.*, *Together Emps. v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 7 (1st Cir. 2021) ("A preliminary injunction preserves the court's ability to grant final relief."). Movants' underlying request, if Rule 45 or § 3486 is the source of authority, is quashal or modification of subpoenas properly before the court. But their preliminary injunction would bar future investigative steps nationwide, require sequestration of materials obtained from providers not before the court, and regulate future enforcement petitions. That relief is not preliminary to a final quashal order. It is a different lawsuit.

This basic failure requires denial of Movants' motion for injunctive relief. A party cannot obtain "intermediate relief" of a different "character as that which may be granted finally" in the case. *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945). Courts must deny motions for preliminary relief seeking "a remedy that w[ould] not be provided" even if it succeeded "in its underlying … suit." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 637 (9th Cir. 2015). Movants have no plausible basis to seek prospective injunctive relief when they

---

[3]    Although Movants gesture to their supposed "constitutionally protected interest in informational privacy[,]" Mem. 23, they do not assert that the Constitution provides them with an implied equitable cause of action against the Department to seek prospective invalidation of subpoenas. Nor could they. "The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Congress provided that subpoena challenges must proceed under the mechanisms set forth in § 3486 and Rule 45. A court's residual equitable authority must yield to the remedial scheme Congress created. Equity cannot be used to prospectively displace that scheme, expand Rule 45 beyond subpoenas actually before the Court, or provide a basis for perpetual classwide immunity from compulsory process authorized by Congress.

have not even bothered to file a complaint, much less put the Department on notice of any claim it is being asked to defend.

Even if preliminary injunctive relief were somehow available in this posture, Movants do not come close to showing their entitlement to it. "[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (citation omitted). To obtain a preliminary injunction, a plaintiff must make a "clear showing" of each of the four factors: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary injunctive relief; (3) that the balance of equities tips in their favor; and (4) that the public interest favors the requested equitable relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Movants cannot carry this burden.

### A. Plaintiffs lack a likelihood of success on the merits.

Even if Movants had identified a cause of action that could support corresponding final relief, Movants would still be unable to show a likelihood of success on the merits. To start, Movants lack standing to seek prospective relief. "[C]lass action or not[,]" "Article III does not give federal courts the power to order relief to any uninjured plaintiff[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quotation omitted). Therefore, every "class member must have Article III standing." *Id.* And when seeking prospective relief, every class member must face a threatened injury that is "certainly impending." *Clapper*, 568 U.S. at 401. Movants fail to persuade that is the case here. *See Murthy v. Missouri*, 603 U.S. 43, 58 (2024) ("At the preliminary injunction stage, then, the plaintiff must make a clear showing that she is likely to establish each element of standing." (quotation omitted)). As a general matter, Movants do not provide any evidence in

23

support of their classwide claim to imminent and irreparable harm.[4] This is especially an issue with respect that members of the putative class are patients of institutions that have not yet received a subpoena. Any harm to these putative class members is entirely speculative. *See id.* at 70 (concluding that plaintiff lacked standing when he relied on "speculative chain of possibilities" in an attempt to establish future harm (quotation omitted)). Movants are therefore unlikely to prevail in seeking classwide relief.[5]

Finally, although the Court has previously disagreed in an order on appeal to the Fourth Circuit, the Department maintains that the subpoena was lawfully issued. To be valid under Fourth Circuit precedent, an administrative subpoena must be:

> (1) authorized for a legitimate governmental purpose; (2) limited in scope to reasonably relate to and further its purpose; (3) sufficiently specific so that a lack of specificity does not render compliance unreasonably burdensome; and (4) not overly broad for the purposes of the inquiry as to be oppressive, a requirement that may support a motion to quash a subpoena only if the movant has first sought reasonable conditions from the government to ameliorate the subpoena's breadth.

*In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000).

---

[4]  Movants' attempt to draw support from "[r]ecent decisions enjoining analogous federal demands targeting transgender healthcare" fails to convince. Mem. at 26. Those cases concerned recipients of federal process; the recipients faced a "threat of future enforcement." *Id.* (quotation omitted). Here, on the other hand, the source of Movants' alleged injury is governmental access to records containing PHI. Movants cannot show that this alleged harm is imminent for each member of the putative class.

[5]  To the extent the Court disagrees, the Department argues that patients in this context only have standing to seek a remedy with respect to de-anonymized records. *See, e.g.*, *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 180 (3d Cir. 2005) ("The cases in which a disclosure-based privacy violation has been found involve situations where there was either actual identification or the disclosure of identifying information such as would allow the individual to be identified and ultimately connected to his or her private information."); *In re NHL Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 955 (D. Minn. 2015) ("Once the identifying information is removed from the record, the patient's privacy interest is essentially eliminated.") (collecting cases). Movants cite *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004), for the proposition that de-identified records do not address their privacy concerns. But that case is an outlier and entirely distinguishable. First, that case does not present the standing question here at all, because in that case the hospital challenged the trial subpoena at issue and clearly had standing to do so. Second, Judge Posner apparently mistook what de-identifying a medical record entails, because the example he gave—of a photograph of a naked patient—would not pass the HIPAA de-identification test. Finally, the irony of Movants citing *Northwestern Memorial Hospital* is that Judge Posner stated in dicta that HIPAA subpoenas appear to "override the HIPAA regulations[,]" meaning that Judge Posner believed the government would have been able to obtain the challenged records in that case via the exact type of subpoena at issue here. 362 F.3d at 925.

24

The Department previously explained why these prerequisites are met and incorporate those arguments here. *See In re 2025 Subpoena to Children's National Hospital*, 1:25-cv-03780 (D. Md. Dec. 15, 2025) (Dkt. 15 at 14-17).[6] Contrary to arguments otherwise, Mem. at 20-22, the subpoenas were issued to investigate potential violations of the FDCA—an obviously "legitimate governmental purpose"—and the document requests are related to, and further, this lawful purpose. *See In re 2025 Subpoena to Children's National Hospital*, 1:25-cv-03780 (D. Md. Dec. 15, 2025) (Dkt. 15-1 ¶¶ 36–40).[7] Movants come nowhere close to arguing otherwise—their improper purpose argument rests on the position that legitimate and reasonable policy positions can exempt certain industries from compliance with currently existing federal law. That is not right. *See United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978) (recognizing that subpoena recipient bears "heavy" burden in proving subpoena was issued pursuant to improper purpose). Indeed, Movants come nowhere close to showing that the "sole" purpose behind the challenged subpoenas was an invalid one. *See Donaldson v. United States*, 400 U.S. 517, 533 (1971) (inquiring whether "the sole objective of the investigation is to" impermissibly use a civil subpoena to "obtain evidence for use in a criminal prosecution"); *Lynn v. Biderman*, 536 F.2d 820, 826 (9th Cir. 1976) ("It is not … a ground to deny enforcement of a subpoena that it is being employed for a wrongful purpose if there is also a legitimate purpose for the subpoena.").

Next, Movants cite the requests' breadth. Mem. at 22. Although the requests are broad, that flows from the nature of the investigation itself: because the Department's "inquiry" is "a relatively broad one," "the permissible scope of materials that [can] reasonably be sought [is] necessarily

---

[6]  The Department raises these same arguments in opposition to the motion to quash.

[7]  Movants note that, in other circumstances, the DOJ has negotiated modifications to the subpoena demands, including in some cases to accept de-identified patient data—at least in the first instance—in order to avoid litigation and advance the investigation. Mem. at 21–22. Such compromises are commonplace in complex investigations. But these modifications do not mean that the information lacks investigative value or is unnecessary—indeed, unredacted patient records remain a superior source of investigative information.

equally broad." *McPhaul v. United States*, 364 U.S. 372, 382 (1960); *see Sec. & Exch. Comm'n v. McGoff*, 647 F.2d 185, 192-93 (D.C. Cir. 1981) ("We agree that the demands are broad. But the nature of the inquiry precludes a trim list of requests." (footnote omitted)); *cf. Sugarloaf Funding, LLC v. U.S. Dep't of the Treasury*, 584 F.3d 340, 348 (1st Cir. 2009) ("[T]here are no cases that universally proscribe the use of 'all documents' language."). The Department's requests are not atypical in this area. *See, e.g.*, *In re Subpoena Duces Tecum*, 228 F.3d at 350 ("[I]f Bailey had treated 15,000 patients over a period of seven years and all of them were reimbursed on claims he submitted, a suspicion of fraud on these claims would justify a review of Bailey's documentation of services to these patients, of the claims submitted on their behalf, and of the reimbursements collected.").

Movants' privacy argument is equally unavailing. Mem. at 23–24. As the Fourth Circuit has previously concluded, "[t]he government has a compelling interest in identifying illegal activity and in deterring future misconduct[,]" and that interest "outweighs the privacy rights of those whose [medical] records" are sought via a properly issued HIPAA subpoena, "particularly in light of the limitation placed on uses of subpoenaed information by § 3486." *In re Subpoena Duces Tecum*, 228 F.3d at 351. That is especially so because "patients have 'a reduced expectation of privacy in patient records,'" given that nearly every patient has agreed pursuant to their insurance policies and releases to allow their medical records to be reviewed." *Id.*[8] Other courts have likewise readily concluded that HIPAA subpoenas can be used to obtain medical records—an unsurprising conclusion in the context of a statute enacted to protect patient privacy while permitting

---

[8]    Indeed, as the Department previously pointed out, CNMC, one of the institutions at issue here, "explicitly informs each and every patient and their family that the hospital may disclose their personal health information to health oversight agencies, public health authorities, law enforcement officials, and in response to subpoenas or to 'prevent criminal activity including fraud.'" *In re 2025 Subpoena to Children's National Hospital*, 1:25-cv-03780 (D. Md. Dec. 15, 2025) (Dkt. 15 at 20).

government investigations. *Doe v. United States*, 253 F.3d 256, 265 (6th Cir. 2001) (enforcing subpoena that included "requests for the files of patients").

For these reasons, Movants are unlikely to succeed on the merits.

**B.  Movants will not suffer irreparable harm during the pendency of this lawsuit.**

Apart from their failure to show a likelihood of success on the merits, Movants cannot show irreparable harm through non-speculative, non-conclusory allegations. In the Fourth Circuit, a "plaintiff must demonstrate a likelihood of irreparable harm without a preliminary injunction; a mere possibility of harm will not suffice." *Williams v. Rigg*, 458 F. Supp. 3d 468, 474 (S.D.W. Va. 2020). Plaintiffs have not done that here. Rather, by their own assertions, their claims of harm are speculative. Movants allege that the DOJ is already in possession of certain medical records at issue and claim immediate harm from "outing, harassment, loss of privacy, threats to safety, and chilling of lawful medical care." Mem. at 27. But Movants point only to speculative, future concerns that these harms may occur, and noteworthy here, they do not identify where DOJ's receipt of medical records have resulted in any of these speculative harms. Possibilities that have not materialized, particularly where Movants allege the conditions that should have brought about the harm already exist is too lenient a standard for obtaining the extraordinary remedy of a preliminary injunction. *Winter*, 555 U.S. at 22 ("The "possibility" standard is too lenient.").

**C.  The balance of the equities and the public interest weight in the Department's favor.**

As for the balance of equities and the public interest, those considerations merge when the government is the opposing party, *Nken v. Holder*, 556 U.S. 418, 435 (2009), and they strongly favor the government. The public and the government have a "compelling interest in finding, convicting, and punishing those who violate the law." *Samia v. United States*, 599 U.S. 635, 655 (2023) (citation omitted); *see also Newsom v. Trump*, 141 F.4th 1032, 1054 (9th Cir. 2025) (recognizing government's "uncontested interest" in the "faithful execution of law."). That interest

far "outweighs the privacy rights of those whose [medical] records" are sought via a properly issued HIPAA subpoena, "particularly in light of the limitation placed on uses of subpoenaed information by § 3486." *In re Subpoena Duces Tecum*, 228 F.3d at 351. Accordingly, Movants' requested injunction—aimed to prevent the Executive Branch from conducting a nationwide criminal investigation into potential wrongdoing—threatens the public interest rather than protects it and weighs heavily against any injunction.

## CONCLUSION

For the reasons stated above, the Court should deny the motions for class certification, a preliminary injunction, and quashal,

Dated: this 1st day of June 2026.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JORDAN C. CAMPBELL
Deputy Assistant Attorney General

LISA K. HSIAO
Acting Director
Enforcement & Affirmative Litigation Branch

ROSS S. GOLDSTEIN (Bar No. 15700)
PATRICK R. RUNKLE
Assistant Directors

 */s/ Scott B. Dahlquist*
SCOTT B. DAHLQUIST
EUGENE O'HALLORAN
Trial Attorneys

United States Department of Justice
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
Tel:         (202) 598-3915
Scott.B.Dahlquist@usdoj.gov