**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In re: Administrative Subpoenas to Children's Hospitals | Case No. 1:26-cv-1834-JRR |

**REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND
FOR A PRELIMINARY INJUNCTION ENJOINING DOJ FROM SEEKING
<u>COMPLIANCE WITH OR ENFORCING SUBPOENA REQUESTS 11–13</u>**

**INTRODUCTION**

The government's opposition concedes more than it argues. The Department of Justice does not dispute that the subpoenas at issue are part of a single, centrally directed investigation. It does not dispute that every subpoena is substantively identical and contains textually identical Requests 11–13. And it does not dispute that eight federal courts, including this one, have found those requests unlawful.

Nonetheless, DOJ asks this Court to treat each subpoena as a separate, geographically isolated matter, even though they are substantively identical, issued as part of a centralized effort, and impact all putative class members in identical ways. It asks this Court to deny class-wide relief—even as the Supreme Court in *Trump v. CASA, Inc.* held that Rule 23 is the proper mechanism for seeking such relief. 606 U.S. 831, 849–50 (2025). The government's opposition thus reduces to a single proposition: that DOJ should be permitted to extract constitutionally protected records hospital by hospital, faster than any individual can move to quash. That proposition should be rejected.

**ARGUMENT**

**I.      Rule 45 Does Not Bar Class Relief**

A.  Rule 45's Venue Provision Does Not Limit the Court's Remedial Authority

The government conflates two distinct questions: where a subpoena challenge may be *brought* and what relief a properly invoked court may *grant*. Rule 45(d)(3)(A)'s venue provision identifies the court with authority to adjudicate a dispute, it does not limit that court's remedial powers once venue is established. This Court has venue here, given that some of the class representatives seek to quash the subpoena issued to Children's National Hospital ("CNH") regarding treatment received in Maryland. *See, e.g.*, Decl. of Youth I.I. (ECF 1-12) at ¶¶ 1-2; *see also In re 2025 Subpoena to Children's Nat'l Hosp. ("In re CNH Subpoena")*, 2026 WL 160792, at *4–*9 (quashing Requests 11–13 and barring DOJ from accessing produced records).

The government reads Rule 45 in isolation, contrary to the rules of statutory interpretation. The Federal Rules of Civil Procedure, including Rule 23, apply to proceedings involving federal agency subpoenas. *See* Fed. R. Civ. P. 81(a)(5). Neither Rule 45 nor § 3486 exempts such proceedings from Rule 23's class action mechanism. As DOJ itself says, these substantively identical subpoenas are part of a coordinated, single endeavor, and DOJ cannot seek enforcement of a subpoena related to Rhode Island in the Northern District of Texas, and simultaneously argue that this Court does not have venue to consider class wide relief.[1]

---

[1] The government's invocation of Rule 45(d)(3)(A)'s "place of compliance" framework is unavailing. The government itself maintains that "Rule 45 does not apply" to process issued under § 3486 yet simultaneously relies on Rule 45's venue-channeling provision to contest this Court's authority. Even where Rule 45 applies through Rule 81(a)(5), it yields where a statute "otherwise provide[s]." Fed. R. Civ. P. 81(a)(5). Section 3486(d)(5) does so, channeling challenges to "the United States district court for the district in which that person or entity does business or resides." 18 U.S.C. § 3486(d)(5). That provision, not the return address on the subpoena, determines venue. The government's cited authorities interpret Rule 45(d)(3)(A) as applied to court-issued subpoenas and have no bearing on § 3486's distinct venue rule. And as discussed above, venue is proper here.

B.        The Government's Additional Procedural Objections Lack Merit

The government raises three additional procedural objections to classwide relief: (1) Movants seek to use Rule 23 to impermissibly expand substantive rights; (2) affected patients lack statutory standing under § 3486; and (3) any challenge is untimely. The first rests on a misunderstanding of Movants' claims; this Court has already rejected the other two.

First, the government's invocation of the Rules Enabling Act misapprehends Movants' position. Movants do not contend that Rule 23 creates a substantive right. Movants already possess substantive constitutional rights, including the right to informational privacy recognized by this Court and the Fourth Circuit. Certifying a class to adjudicate existing constitutional claims does not "abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b). Rule 23 merely determines whether that right may be adjudicated on a classwide basis. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality).

Second, this Court has already rejected the government's statutory standing argument. In the CNH proceeding, the Court held that affected nonparties may challenge a § 3486 subpoena under Rule 45. *In re CNH Subpoena*, 2026 WL 160792, at *4–5; *see also In re Grand Jury Subpoena # 06-1*, 274 F. App'x 306, 310 (4th Cir. 2008); *Adkins v. CMH Homes, Inc.*, No. 3:13-CV-32123, 2014 WL 7005856, at *2 (S.D.W. Va. Dec. 9, 2014) (persons with a cognizable privacy interest in subpoenaed materials may challenge the subpoena even when they are not the recipient).

Third, this Court has already rejected the timeliness objection. In the CNH proceeding, the Court found "the timeliness argument is disingenuous, given the patients' initial lack of awareness of, and uncertainty regarding, the subpoena." *In re CNH Subpoena*, 2026 WL 160792, at *5. (citing *In re 2025 UPMC Subpoena*, 2:2025-mc-01069-CB, 2025 WL 3724705, at *2, (W.D. Pa. Dec. 24,2025). Accordingly, these additional arguments fail.

3

## II.    Class Certification Is Appropriate

The government's attempt to wield *CASA* against class certification turns the decision on its head. *CASA* directed plaintiffs seeking relief for individuals beyond the named plaintiffs into Rule 23; it does not eliminate classwide relief for a class whose members are located across the country. *CASA*, 606 U.S. at 847–50. Movants seek exactly what *CASA* prescribes.

Nothing in the government's authorities suggest otherwise. *AARP v. Trump*, 605 U.S. 91 (2025) supports Movants.  There, the Supreme Court held that "courts may issue temporary relief to a putative class" without first deciding "whether a class should be certified," *id.* at 97–98. Because *AARP* granted relief "to preserve [its] jurisdiction," *id.* at 97, its rationale supports Movants: provisional or full classwide relief is appropriate precisely when the Court, as here, must preserve its ability to grant meaningful relief before the motion is rendered moot.

*Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342 (D. Mass. 2011) is also misplaced. There, the court denied a preliminary injunction as "premature" only because it first needed discovery to determine the size of the putative class and the defendant's internal practices—information not yet in the record. *Id.* at 355–56. Here, no such uncertainty exists. DOJ has provided no basis for class discovery here because there is none; the class certification analysis here purely involves legal issues. Moreover, *Bosque* involved a private commercial dispute over mortgage modifications with no showing of irreversible harm, a materially different posture from this constitutional privacy case in which the government is actively acquiring minors' medical records. Courts in this Circuit and elsewhere have granted classwide preliminary relief where, as here, agency conduct is generally applicable to every putative class member.[2] The government's position would allow it to moot the class action by continuing to

---

[2] *See, e.g.*, *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 432–33 (6th Cir. 2012); *Barbara v. Trump*, 790 F. Supp. 3d 80, 89–104 (D.N.H. July 10, 2025), *cert. granted*, *Trump v. Barbara*, No. 25-365 (Dec. 5, 2025); *CASA,*

extract constitutionally protected records while litigating certification—exactly the irreversible harm preliminary relief is designed to prevent.

Thus, this Court's prior observation that it could not extend relief beyond the named CNH movants on standing grounds is precisely the limitation Rule 23 is designed to overcome. *In re CNH Subpoena*, 2026 WL 160792, at \*9. Once a class is certified, absent class members need not independently establish standing or invoke the court's jurisdiction. *See Sosna v. Iowa*, 419 U.S. 393, 399–401 (1975).

### III.    Movants Satisfy Every Element of Rule 23

#### A.    The Class Is Ascertainable and Class Members Have Standing

Even if an ascertainability requirement applies, the proposed class satisfies it.[3] The government argues the class is not ascertainable because the definition reaches "forward in time." But forward-looking class definitions are routine in Rule 23(b)(2) cases challenging ongoing government policies, and courts have repeatedly certified such classes. *See, e.g.*, *D.N.N. v. Liggins*, No. 1:25-CV-01613-JRR, 2026 WL 632371, at \*21 (D. Md. Mar. 6, 2026); *CASA, Inc. v. Trump*, 793 F. Supp. 3d 703, 730 (D. Md. 2025); *J.D. v. Azar*, 925 F.3d 1291, 1321–23 (D.C. Cir. 2019); *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014). Moreover, the class definition turns on objective criteria verifiable from hospital records and subpoenas.  *See EQT*

---

*Inc. v. Trump*, 793 F. Supp. 3d 687, 700–01 (D. Md. Aug. 7, 2025); *Sanchez v. McAleenan*, No. GJH-19-1728, 2020 WL 607032, at \*5 n.7 (D. Md. Feb. 7, 2020), *modified in part*, 2020 WL 6263428 (D. Md. Oct. 23, 2020); *J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 376 (D. Md. 2019); *cf. Barr v. Garland*, 463 F. Supp. 3d 632 (D. Md. 2020), *vacated on other grounds*, 34 F.4th 338, 355–57 (4th Cir. 2022).

[3] The government's ascertainability argument fails at the threshold. While Movants original memorandum addressed ascertainability to demonstrate that the class readily satisfies the standard, this Circuit has not always applied ascertainability in the context of Rule 23(b)(2) classes seeking injunctive relief from a discriminatory policy. *See Kadel v. Folwell*, 100 F.4th 122, 160–61 (4th Cir. 2024), *vacated on other grounds*, 145 S. Ct. 2838 (2025). As the Fourth Circuit explained, courts of appeals have "consistently declined to impose an ascertainability requirement in 23(b)(2) cases requesting that a party be enjoined from certain actions" because the concerns animating the requirement, such as notice and damages, are not at play in a 23(b)(2) case, "which seeks only declaratory and injunctive relief." *Id.*.

*Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) ("A class cannot be certified unless a court can readily identify the class members in reference to objective criteria.").

The government also argues that the class is not ascertainable because different litigation postures across districts will require individualized inquiries. This argument fails. Every putative class member faces identical protected health information ("PHI") demands under the same statute and possesses the same constitutionally protected privacy interest—the common question eight federal courts have resolved identically. The varying procedural postures are a product of DOJ's own enforcement choices, and Rule 23 does not reward defendants for manufacturing procedural complexity. *See Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998).

The government further asserts that the Court will be put in the position of reviewing the work of its sister courts. Not so. A classwide quashal would restrain DOJ's future use of PHI obtained under Requests 11–13; it would not vacate, review, or invalidate any sister court's order. *See In Re: Administrative Subpoena 25-1431-032 to Rhode Island Hospital*, No. 1:26-mc-0007-MSM-AEM (D. R.I. May 14, 2026).[4] The Northern District of Texas enforcement order, currently on appeal, does not alter this analysis; indeed, it underscores the need for class treatment: absent a classwide injunction, DOJ can continue filing enforcement petitions in forums of its choosing, compelling production before patients can intervene.

B.    A Single Legal Question Resolves Every Class Member's Claim

The government's commonality argument rests on the assertion that "different legal postures" across districts defeat classwide resolution. This confuses procedural history with the

---

[4] The District of Rhode Island held that relief would not improperly conflict with the Northern District of Texas enforcement order because the affected children were not parties to the Texas proceeding, their privacy interests were distinct from the hospital's compliance interests, and the challenge was to "an agency's administrative subpoena rather than to a court's judgment." *In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*, 2026 WL 1392565, at *4–5. The court explained that it was quashing "the administrative subpoena—the instrument issued by DOJ—not the enforcement order entered by the Texas court," and enjoined DOJ from seeking, receiving, using, retaining, or disseminating patient-identifying information or PHI. *Id.* at *10.

6

substantive legal question. The "common contention" requirement under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), asks whether a single legal question is "capable of classwide resolution." Whether Requests 11–13 exceed § 3486 authority and violate constitutional privacy rights does not turn on the legal posture of each subpoena, and the answer is the same as to each putative class member.

This district has repeatedly recognized that when the government acts pursuant to a single policy that uniformly affects all class members, factual differences—including varying procedural status—do not defeat commonality so long as the core legal questions do not vary by class member. *See, e.g.*, *Does 4, 7, 22, 27, 28, and 29 v. Musk*, No. CV 25-0462-TDC, 2025 WL 2346258, at *14 (D. Md. Aug. 13, 2025), *motion to certify appeal denied sub nom. Does v. Musk*, No. CV 25-0462-TDC, 2026 WL 242062 (D. Md. Jan. 29, 2026); *D.N.N. v. Liggins*, No. 1:25-CV-01613-JRR, 2026 WL 632371, at *21 (D. Md. Mar. 6, 2026).

> C.     Typicality Is Satisfied

The government's typicality argument fails for the same reason. Representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds, Wal-Mart*, 564 U.S. at 338; *see Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). Typicality is satisfied where "the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct." 7A Wright et al., *Federal Practice and Procedure* § 1764 (4th ed.). Here, every named Movant challenges the same PHI demands on the same legal grounds and seeks the same prospective relief. The "distinct differences" the government identifies—varying compliance and litigation postures—reflect DOJ's choices and hospital responses, not material variations that defeat typicality.

D.       The Named Plaintiffs Adequately Represent the Class

The government's adequacy arguments fail. In *CASA, Inc. v. Trump*, 793 F. Supp. 3d 703, 724–26 (D. Md. 2025), the court certified a Rule 23(b)(2) class with pseudonymous representatives, holding that they would adequately represent absent class members because the relief "benefits class representatives and class members alike." The government's assertion that some class members may "support" DOJ's investigation is pure speculation. Under *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 430 (4th Cir. 2003), a conflict "must be more than merely speculative or hypothetical," and attorney argument unmoored from the record does not suffice. The government identifies no putative class member by name or pseudonym, attaches no declaration, and cites no public statement of support because it cannot. Even if it could, that would not defeat adequacy: the injunction and voluntary disclosure are not mutually exclusive. *See id.*; *cf. Kim v. Allison*, 87 F.4th 994, 1000–01 (9th Cir. 2023) (conflict exists only where maximizing the representatives' interests "would necessarily undercut the interests of another portion of the class").[5]

E.       Rule 23(b)(2) Is Satisfied Because a Single Injunction Would Provide Complete Relief

The government's contention that quashal is "neither injunctive nor corresponding declaratory relief" defies both common sense and settled law. A quashal order directs a subpoena recipient not to produce records and bars the issuing party from enforcing the subpoena—that is quintessentially prohibitory injunctive relief. *See Nken v. Holder*, 556 U.S. 418, 428 (2009) (describing an injunction as "a means by which a court tells someone what to do or not to do"). The government's own cited authorities confirm this: *In re Mfrs. Trading Corp.*, 194 F.2d 948,

---

[5] Any class member who wants to speak to DOJ or voluntarily provide records remains free to do so. The relief sought here prevents compelled disclosure through unlawful subpoenas; it does not prohibit voluntary cooperation. No class member has a legitimate interest in DOJ compelling disclosure of their PHI.

953 (6th Cir. 1952); *Hartnett v. Hardenbergh*, No. 3:23-CV-17-HEH, 2024 WL 310193, at *2 (E.D. Va. Jan. 26, 2024); *Landry v. GMAC Mortg.*, No. CV H-12-0014, 2012 WL 12903540, at *1 n.2 (S.D. Tex. Aug. 15, 2012)—each characterizes quashal as nullifying or setting aside compulsory process. These characterizations confirm rather than negate the injunctive nature of the remedy: an order nullifying compulsory process restrains the government from compelling compliance.

Rule 23(b)(2) requires only that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The "key" to a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360. A classwide order quashing Requests 11–13 satisfies this standard: it resolves the legality of DOJ's uniform conduct in a single stroke, providing complete relief to every class member. As the Third Circuit observed, "[w]hen a suit seeks to define the relationship between the defendant(s) and the world at large, . . . (b)(2) certification is appropriate." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (citing *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984)). This case fits squarely within that principle: Movants seek to define the lawful boundaries of DOJ's investigative authority as applied to an entire class of patients whose PHI is subject to identical demands.

The government's reliance on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), is misplaced. *Clapper*'s heightened "certainly impending" standard addressed a speculative chain of contingencies—whether the government *would* target certain communications, *would* invoke a particular surveillance authority, *would* obtain court approval, and *would* successfully intercept them. *Id.* at 410–14. No such speculation is required here. DOJ

has *already* issued more than 20 subpoenas; those subpoenas *already* demand class members' PHI through Requests 11–13; DOJ has *already* filed at least one enforcement action to compel production; and DOJ has *already* received some class members' PHI pursuant to those unlawful demands. That is precisely the "substantial risk" that *Clapper* itself recognized as sufficient for standing. *Id.* at 414 n.5. Class members face a present threat from a current government civil investigation, not a hypothetical future program. *See Walters*, 145 F.3d at 1047.

IV. **If the Court is not Prepared to Expeditiously Rule on the Class Certification and Quashal Motions, Then a Preliminary Injunction is Warranted**

A.     Rule 45 Provides Authority for Preliminary Injunctive Relief

The government insists that a formal complaint is a prerequisite to injunctive relief, citing *Litton Industries, Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir. 1978), and *Findlay v. McAllister*, 113 U.S. 104, 115 (1885). Neither supports the government's position. In *Litton*, the plaintiff had no cognizable claim at all because Eleventh Amendment immunity barred suit. 587 F.2d at 74. *Findlay* likewise addressed whether the plaintiff had any legal basis to sue. 113 U.S. at 115-16. Here, Movants have a right under Rule 45 to challenge subpoenas that impose undue burdens or require disclosure of protected matter. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). A motion to quash is itself an ancillary proceeding that invokes the court's jurisdiction; interim relief to preserve the efficacy of a pending quashal ruling is the ordinary exercise of equitable authority. *See FTC v. Dean Foods Co.*, 384 U.S. 597, 603–05 (1966) (recognizing "traditional power to issue injunctions to preserve the status quo" to "prevent impairment of the effective exercise of appellate jurisdiction").

The government's reliance on *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), is misplaced. *TransUnion* addressed a Rule 23(b)(3) damages class requiring individualized proof of injury. Movants here seek injunctive relief under Rule 23(b)(2)—relief that operates

10

uniformly across the class. *See Dukes*, 564 U.S. at 360. Indeed, *TransUnion* itself recognized that "material risk of future harm can satisfy the concrete-harm requirement" for injunctive relief. 594 U.S. at 435. The Fourth Circuit has held that in Rule 23(b)(2) cases challenging a uniform government policy, standing is assessed with reference to the challenged conduct, not individual class member circumstances. *See Kadel*, 100 F.4th at 160–61.

Additionally, *De Beers Consolidated Mines v. United States*, 325 U.S. 212 (1945), supports Movants, not the government. *De Beers* requires that preliminary relief be "of the same character" as final relief. *Id.* at 220. Here, the preliminary relief and final relief meet that standard: both seek to prevent DOJ from obtaining constitutionally protected medical records. The *status quo* is the absence of government-held patient records; the preliminary injunction preserves that state while the Court adjudicates whether Movants' can quash the subpoena requests. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

Without interim relief, DOJ could continue to acquire records before the Court has the opportunity to rule on these motions. *See AARP*, 605 U.S. at 94 (2025) ("[A] district court's inaction in the face of extreme urgency and a high risk of 'serious, perhaps irreparable,' consequences may have the effect of refusing an injunction," 16 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3924.1, pp. 174, 180–181 (3d ed. 2012) (quoting *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181, 75 S.Ct. 249, 99 L.Ed. 233 (1955))).). The government's position would leave Movants without the most effective remedy to halt the unlawful invasion of privacy: by the time this Court rules, DOJ could already possess more of the records it seeks. Once DOJ receives or reviews minors' medical records, the

11

privacy invasion has occurred, and no later order can make the government unlearn the information or fully eliminate the risk of derivative use. Federal courts retain "their equitable power to issue injunctions in suits over which they have jurisdiction." *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979).[6]

### B. Movants Satisfy the Irreparable Harm Requirement

The government's characterization of Movants' harms as "speculative" rests on the fallacy that a privacy violation occurs only upon misuse of information, not upon disclosure itself. That is not the law. The constitutional right to informational privacy protects against the acquisition of sensitive information absent lawful justification. *See Carpenter v. United States*, 585 U.S. 296, 316 (2018); *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 929 (7th Cir. 2004). The government's own authorities—*C.N. v. Ridgewood Board of Education*, 430 F.3d 159 (3d Cir. 2005), and *In re NHL Players' Concussion Injury Litigation*, 120 F. Supp. 3d 942 (D. Minn. 2015)—hold that privacy interests are "essentially eliminated" only when identifying information is removed. DOJ seeks the identifiers directly.

The government's demand that Movants show production of records has already resulted in outing or harassment misunderstands the irreparable harm standard. Preliminary relief exists to prevent harm before it occurs, not to compensate afterward. Moreover, the government's own admissions confirm the harm is not speculative: "The Department has obtained medical records from other pediatric hospitals as part of this very investigation." *In re CNH Subpoena*, No. 26-1104 (4th Cir.), Br. for Appellants (ECF 13) at 24, *Parent AA v. DOJ*, No. 26-1104 (4th Cir. Apr. 29, 2026). DOJ cannot simultaneously argue that Movants' fears are speculative and that disclosure has already occurred elsewhere.

---

[6] For the reasons stated in the Court's prior decision, the government's arguments regarding likelihood of success on the merits fail. *See In re CNH Subpoena*, 2026 WL 160792, at *4–*9.

C.        The Balance of Equities and Public Interest Favor Movants

The government's equities argument assumes the premise Movants challenge: that DOJ is conducting a legitimate investigation. This Court and seven others have found otherwise. *See In re CNH Subpoena*, 2026 WL 160792, at *9 (D. Md. Jan. 21, 2026); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 236-39 (D. Mass. 2025); *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295, 1303-04 (W.D. Wash. 2025); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 578-81, 588-607 (E.D. Pa. 2025); *In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-mc-00041, 2025 WL 3562151, at *13 (W.D. Wash. Sept. 3, 2025); *In re 2025 UPMC Subpoena*, No. 2:25-mc-01069, 2025 WL 3724705, at *2-*3 (W.D. Pa. Dec. 24, 2025); *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, Misc. No. 25-mc-00063-SKC-CYC, 2026 WL 33398, at *7 (D. Colo. Jan. 5, 2026); Order, *In Re: Administrative Subpoena 25-1431-032 to Rhode Island Hospital*, No. 1:26-mc-0007-MSM-AEM,  (D. R.I. May 13, 2026).

Even under HIPAA's own law-enforcement exception, 45 C.F.R. § 164.512(f), disclosure is permitted only when the information sought is "relevant and material to a legitimate law enforcement inquiry" and "specific and limited in scope to the extent reasonably practicable." Where, as here, courts have found no legitimate inquiry exists, HIPAA's exception provides no authorization—and indeed affirmatively requires that the requested information not be disclosed. *See United States v. Elliott*, 676 F. Supp. 2d 431, 439–40 (D. Md. 2009) (holding that hospitals, as "covered entities" under HIPAA, bear potential civil and criminal liability for disclosing patient records in response to an improper subpoena). Requests 11–13 demand sweeping patient-identifying data across entire populations of minor patients without any particularized suspicion of wrongdoing by any patient, parent, or provider—the antithesis of "specific and limited."

13

D.    The Government's Additional Authorities Are Distinguishable

The government's additional authorities do not support enforcing subpoenas that multiple federal courts have found pretextual. *United States v. LaSalle National Bank*, 437 U.S. 298 (1978), and *Donaldson v. United States*, 400 U.S. 517 (1971), addressed the IRS summons context and whether criminal prosecution potential negates an otherwise legitimate civil purpose—not whether a subpoena already found pretextual can be rehabilitated. And *Doe v. United States*, 253 F.3d 256 (6th Cir. 2001), never addressed patient file requests because the physician abandoned that challenge on appeal. *See id.* at 265. Finally, DOJ's own conduct undermines any breadth argument: DOJ voluntarily withdrew Requests 11–13 at Children's Hospital of Los Angeles and accepted de-identified records at UPMC, confirming that patient-identifying information is unnecessary to any genuine FDCA investigation. *In re 2025 Children's Hosp. of L.A. Subpoena*, No. 2:25-cv-11183, Settlement Agreement at § C (C.D. Cal. Jan. 22, 2026) (ECF 25-1); Gov't Supp. Br. at 2, *In re 2025 UPMC Subpoena*, No. 2:25-mc-01069 (W.D. Pa. Jan. 16, 2026) (ECF 58).

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court grant their Motions for Class Certification, to Quash Requests 11–13, and for a Preliminary Injunction.

Dated: June 4, 2026

_____/s/ Eve L. Hill_____
Eve L. Hill (Bar No. 424896)
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
ehill@browngold.com

Joshua D. Rovenger (pro hac vice)
Donovan C. Bendana (pro hac vice)

14

GLBTQ LEGAL ADVOCATES & DEFENDERS
(GLAD LAW)
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jrovenger@gladlaw.org
dbendana@gladlaw.org

Shannon Minter (pro hac vice)
Rachel Berg (pro hac vice)
NATIONAL CENTER FOR LGBTQ RIGHTS
1401 21st Street # 11548
Sacramento, California 95811
(415) 365-1338
sminter@nclrights.org
rberg@nclrights.org

*Attorneys for Movants*