**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **IN RE: ADMINISTRATIVE SUBPOENAS TO CHILDREN'S HOSPITALS** | **Civil No.: 8:26-cv-01834-JRR** |

## MEMORANDUM OPINION

Pending before the court is Movants' Motion for Class Certification,[1] to Quash Requests 11–13, and for a Preliminary Injunction at ECF No. 1-1 (the "Motion").[2]   Following expedited briefing by the parties, the court convened a hearing on the Motion today, June 9, 2026.  For the reasons that follow, by accompanying order, as to all requests, the Motion will be granted in part and denied in part as set forth herein.

---

[1] Movants describe their request as one for conditional class certification although the proposed order does not purport to certify a class on a conditional basis.  (ECF No. 1-19, "A class under Rule 23(b)(2) is certified.")  Regardless, Rule 23 does not provide for conditional class certification following the 2003 Amendments to the Federal Rules of Civil Procedure, the notes on which provide in relevant part: "Subdivision (c)(1)(C) reflects two amendments. The provision that a class certification 'may be conditional' is deleted. A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."  This, however, will not yield a different result, as the distinction is immaterial to the court's analysis.

[2] Also pending is Movants' unopposed Motion to Proceed Under Pseudonyms, to Waive Requirement under Local Rule 102.2(a) to Provide Addresses, and for Protective Order at ECF No. 2 (the "Pseudonym Motion").  For the same reasons the court determined pseudonym use was warranted in its opinion in *In re Children's National Hospital*, No. 1:25-CV-03780-JRR, 2026 WL 160792, at *1 n.1 (D. Md. Jan. 21, 2026), the court similarly finds pseudonym use warranted here based on consideration of the factors enunciated in *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993).  Once again, there can be no dispute that at the core of this case is information incredibly sensitive and personal in nature—information regarding minors' and young adults' transgender status and related medical treatment.  *See Hersom v. Crouch*, No. 2:21-CV-00450, 2022 WL 908503, at *2 (S.D.W. Va. Mar. 28, 2022) (regarding transgender status); *A.P.G. by Jones v. Fisher-Price, Inc.*, No. 3:22CV112 (DJN), 2023 WL 4406023, at *4 (E.D. Va. July 7, 2023) (regarding minor's medical information).  Public dissemination of one's transgender status and medical information would undoubtedly risk exposure of these minors and their families to harm, including harassment and discrimination. *See Hersom*, 2022 WL 908503, at *2; *PFLAG, Inc. v. Trump*, 766 F. Supp. 3d 535, 549 n.14 (D. Md. 2025).  Further, here, pseudonym use is to protect the privacy interests of minors (and people who received care while minors) in a proceeding against a government party, where the Government neither asserts prejudice nor opposes the requested relief as to proceeding anonymously (as opposed to anonymity in the context of class certification).  *James*, 6 F.3d at 238.  The court will therefore grant the Pseudonym Motion.

I.    BACKGROUND

A. Executive Order 14187: "Protecting Children From Chemical and Surgical Mutilation"

On January 28, 2025, President Donald J. Trump issued Executive Order 14187, titled "Protecting Children from Chemical and Surgical Mutilation." Exec. Order No. 14187, *Children From Chemical and Surgical Mutilation*, 90 Fed. Reg. 8771 (Jan. 28, 2025). In it, *inter alia*, President Trump describes gender affirming care as a "stain on our Nation's history" and declares: "it must end." *Id.* § 1. The Executive Order issues several "[d]irectives to the Department of Justice," including that "[t]he Attorney General shall . . . prioritize investigations and take appropriate action to end deception of consumers, fraud, and violations of the Food, Drug, and Cosmetic Act[3] by any entity that may be misleading the public about long-term side effects of chemical and surgical mutilation." *Id.* § 8. The Executive Order defines "chemical and surgical mutilation" as follows:

> [T]he use of puberty blockers, including GnRH agonists and other interventions, to delay the onset or progression of normally timed puberty in an individual who does not identify as his or her sex; the use of sex hormones, such as androgen blockers, estrogen, progesterone, or testosterone, to align an individual's physical appearance with an identity that differs from his or her sex; and surgical procedures that attempt to transform an individual's physical appearance to align with an identity that differs from his or her sex or that attempt to alter or remove an individual's sexual organs to minimize or destroy their natural biological functions. This phrase sometimes is referred to as 'gender affirming care.'

*Id.* § 2.

B. Attorney General Announces Plan to Effectuate Executive Order 14187

In furtherance of the President's Directives, in April 2025, then-Attorney General ("AG")

---

[3] The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.* ("FDCA"). Relevant here, *inter alia,* the FDCA prohibits the "adulteration or misbranding of any . . . drug . . . in interstate commerce" and the "delivery or proffered delivery thereof for pay or otherwise." *Id*. §§ 331(a), (e).

Pamela Bondi issued a Memorandum for Select Component Heads with the subject: "Preventing the Mutilation of American Children."[4]  Therein, AG Bondi describes gender affirming care as a "radical ideological agenda" rooted in "junk science" and "Hollywood" celebrities; she characterizes administration of such care as "barbaric" and "ruining . . . children's lives."[5]  AG Bondi announces that the purpose of her memorandum is to outline how the U.S. Department of Justice (the "DOJ") will effectuate Executive Order 14187 and President Trump's directive therein that gender affirming care "must end," writing:

> President Trump has put a stop to this by issuing his executive order "Protecting Children from Chemical and Surgical Mutilation," signed to halt the exploitation enabled by misguided Biden-era policies. Pursuant to the President's directive, I am issuing the following guidance to all [DOJ] employees to enforce rigorous protections and hold accountable those who prey on vulnerable children and their parents.[6]

AG Bondi's memorandum goes on to announce a multi-faceted plan to fulfill President Trump's policy mandate:

> [DOJ] will investigate and hold accountable medical providers and pharmaceutical companies that mislead the public about the long-term side effects of chemical and surgical mutilations. To that end:
>
> - I am directing the Civil Division's Consumer Protection Branch to undertake appropriate investigations of any violations of the Food, Drug, and Cosmetic Act by manufacturers and distributors engaged in misbranding by making false claims about the on- or off-label use of puberty blockers, sex hormones, or any other drug used to facilitate a child's so-called "gender transition." Even if otherwise truthful, the promotion of off-label uses of hormones-including through informal campaigns like those conducted by sales reps or under the guise of sponsored continuing medical education courses-run afoul of the FDA's prohibitions on misbranding and mislabeling.

---

[4] U.S. OFF. OF THE ATT'Y GEN., *Memorandum for Select Component Heads: Preventing the Mutilation of American Children* (Apr. 22, 2025), https://www.justice.gov/ag/media/1402396/dl [https://perma.cc/79JK-L8CK].
[5] *Id.* at p. 1.
[6] *Id.* at p. 3.

- I am also directing the Civil Division's Fraud Section to pursue investigations under the False Claims Act[7] of false claims submitted to federal health care programs for any noncovered services related to radical gender experimentation. Examples include but are not limited to physicians prescribing puberty blockers to a child for an illegitimate reason (*e.g.,* gender dysphoria) but reporting a legitimate purpose (*i.e.,* early onset puberty) to the Centers for Medicare & Medicaid Services, and hospitals performing surgical procedures to remove or modify a child's sex organs while billing Medicaid for an entirely different procedure. Falsely billing the government for the chemical or surgical mutilation of a child is a violation of the False Claims Act and is subject to treble damages and severe penalties.

- I am also notifying the public that the Department is eager to work with *qui tam* whistleblowers with knowledge of any such violations. The False Claims Act allows private citizens to file these actions on behalf of the government against those who have defrauded the government. In meritorious cases, [DOJ] can intervene, and even if the Department takes over the case, the relator may receive a portion of the government's financial recovery. In 2024 alone, qui tam relators received a $344 million share of victories won by the Department. For more information about initiating a *qui tam* action, please visit the Department's website https://www.justice.gov/archives/jm/criminal-resource-manual-932-provisions-handlingqui-tam-suits-filed-under-false-claims-act.[8]

Also relevant is AG Bondi's announcement of a "coalition" described as follows:

> Federal law enforcement must stand ready to assist states that prioritize children's health over ideology. Accordingly, the Department is launching the Attorney General's Coalition Against Child Mutilation. Through this Coalition, I will partner with state attorneys general to identify leads, share intelligence, and build cases against hospitals and practitioners violating federal or state laws banning female genital mutilation and other, related practices. The Department will support the state-level prosecution of medical

---

[7] *See* 31 U.S.C. § 3729 regarding prohibition of submission to the Government of false or fraudulent claims for payment.

[8] *See Memorandum for Select Component Heads: Preventing the Mutilation of American Children*, *supra* footnote 4, at pp. 4–5 (footnote omitted).

professionals who violate state laws that protect children, such as Alabama's Vulnerable Child Compassion and Protection Act, which makes it a felony for doctors to treat children with puberty blockers or hormones to affirm a gender identity inconsistent with biological sex.[9]

On June 11, 2025, Assistant Attorney General ("Assistant AG") Brett Shumate issued a memorandum titled "Civil Division Enforcement Priorities" to "All Civil Division Employees."[10] In the memo, Assistant AG Shumate describes the action the DOJ's Civil Division will take in furtherance of AG Bondi's April 2025 memorandum to comply with Executive Order 14187. Assistant AG Shumate's memorandum provides in part:

> The Civil Division will use all available resources to prioritize investigations of doctors, hospitals, pharmaceutical companies, and other appropriate entities consistent with these directives. These efforts will include, but will not be limited to, possible violations of the Food, Drug, and Cosmetic Act and other laws by (1) pharmaceutical companies that manufacture drugs used in connection with so-called gender transition and (2) dealers such as online pharmacies suspected of illegally selling such drugs. 31 U.S.C. § 301 *et seq.* In addition, the Civil Division will aggressively pursue claims under the False Claims Act against health care providers that bill the federal government for impermissible services. This includes, for example, providers that attempt to evade state bans on gender dysphoria treatments by knowingly submitting claims to Medicaid with false diagnosis codes.[11]

### C. DOJ's Administrative Subpoenas to Children's Hospitals

Further to President Trump's mandate, and the DOJ compliance memoranda described above, the DOJ issued, pursuant to 18 U.S.C. § 3486, "more than 20 subpoenas to doctors and clinics involved in performing transgender medical procedures on children."[12]  At issue in the

---

[9] *Id.* at p. 5 (footnote omitted).
[10] U.S. OFF. OF THE ATT'Y GEN., *Memorandum: Civil Division Enforcement Priorities 2-3* (June 11, 2025), https://www.justice.gov/civil/media/1404046/dl?inline [https://perma.cc/ECC8-3ZLE].
[11] *Id.* at p. 1.
[12] OFF. OF PUB. AFFS. U.S. DEP'T OF JUST., *Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender* (July 9, 2025), https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical [https://perma.cc/P8WG-LARB].

instant matter are three subpoena request— Requests 11, 12, and 13 (the "Requests")—that provide as follows:

> Request 11: Documents sufficient to identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy.
>
> Request 12: For each patient identified in Subpoena [Request 11], documents relating to clinical indications, diagnoses, or assessments that formed the basis for prescribing puberty blockers or hormone therapy.
>
> Request 13: All documents relating to informed consent, patient intake, and parent or guardian authorization for minor patients identified in [Request 11], including any disclosures about off-label use (i.e., uses not approved by the United States Food and Drug Administration) and potential risks.

(Subpoena Duces Tecum No. 25-1431-019, ECF No. 1-18 at p. 9–10.)[13]   These Requests appear substantively identical across the various DOJ administrative subpoenas issued for these purposes, based on the actions challenging these same requests in other jurisdictions[14] and Government counsel's assertion, *see* Case No. 25-3780, ECF No. 1-38.

Movants across the country—both healthcare institutions and patients—have repeatedly instituted actions to limit these administrative subpoenas, and specifically the personal health information ("PHI") requests made therein, based on their issuance for an improper purpose.[15]  As

---

[13] Unless otherwise specified, the court's references to this document refer to the CM/ECF pagination.

[14] *See infra* footnote 15.

[15] *See, e.g.*, *In re Admin. Subpoena 25 1431 032 to Rhode Island Hosp.*, — F. Supp. 3d — , No. CV 1:26-MC-0007-MSM-AEM, 2026 WL 1392565, at *3 (D.R.I. May 14, 2026); *In re Children's Nat'l Hosp.*, No. 1:25-CV-03780-JRR, 2026 WL 160792 (D. Md. Jan. 21, 2026) (Children's National Hospital); *In re 2025 UPMC Subpoena*, No. 2:25-MC-01069-CB, 2025 WL 3724705, at *1 (W.D. Pa. Dec. 24, 2025), *judgment entered,* No. 2:25-MC-01069-CB, 2026 WL 570419 (W.D. Pa. Mar. 2, 2026) (UPMC); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 562 (E.D. Pa. 2025) (The Children's Hospital of Philadelphia); *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295, 1298 (W.D. Wash. 2025) (multi-state telehealth provider); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 232 (D. Mass. 2025) (Boston Children's Hospital); *In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-MC-00041-JHC, 2025 WL 3562151, at *1 (W.D. Wash. Sept. 3, 2025) (Seattle Children's Hospital).  *See also In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, No. 25-MC-00063-SKC-CYC, 2026 WL 33398, at *1 (D. Colo. Jan. 5, 2026) (Children's Hospital Colorado on a pending report and recommendation).

far as this court can discern, courts have uniformly granted these motions.[16]

### D. About Movants

Movants are minor transgender patients, together with their parents or guardians, who received transgender healthcare from Children's National Hospital's ("CNH")[17] Gender Development Program (Movants I.I., J.J., K.K., L.L.), Connecticut Children's Medical Center's Gender Program (Movants P.P., Q.Q., S.S.), Michigan Medicine's Child and Adolescent Gender Services (Movants M.M., O.O., N.N.), or California's Rady Children's Hospital's Center for Gender-Affirming Care (Movant R.R.) from January 1, 2020 to the present.  (ECF No. 1-1 ¶ 1; Parent I.I. Decl., ECF No. 1-3 ¶ 1; J.J. Decl., ECF No. 1-4 ¶ 1; K.K. Decl., ECF No. 1-5 ¶ 2; L.L. Decl., ECF No. 1-6 ¶ 2; M.M. Decl., ECF No. 1-7 ¶ 2; O.O. Decl., ECF No. 1-8 ¶ 2; P.P. Decl., ECF No. 1-9 ¶ 2; Q.Q. Decl., ECF No. 1-10 ¶ 2; S.S. Decl., ECF No. 1-11 ¶ 2;  Youth I.I. Decl., ECF No. 1-12 ¶ 1; N.N. Decl., ECF No. 1-13 ¶ 2; R.R. Decl., ECF No. 1-14 ¶ 2.)

Movants seek to certify a class defined as:

> [A]ll minors, along with their parents or guardians, whose personal health information (PHI) or identifying information is subject, now or in the future, to compelled disclosure under a DOJ subpoena issued under 18 U.S.C. § 3486 as part of DOJ's national investigation into the distribution of certain prescription drugs to minors with gender dysphoria and related disorders seeking records or other PHI relating to transgender healthcare, including but not limited to patient-identifying information, parent/guardian information, clinical records, and informed-consent, intake, and parent or guardian authorization materials, and served on any health care provider or custodian of pediatric medical records, regardless of whether the recipient is formally designated a "children's hospital" under federal law.

---

[16] *See id.*  On April 30, 2026, the Government filed a Petition for Enforcement of Administrative Subpoena Pursuant to 18 U.S.C. § 3486(c) related to an administrative subpoena issued to Rhode Island Hospital in the Northern District of Texas, Case No. 4:26-MC-0006-O.  The Northern District of Texas granted the Petition that same day.  Case No. 4:26-MC-0006-O, Dkt. 2.  The District of Rhode Island provided extensive detail on the progression of the Northern District of Texas case in its recent opinion.  *See In re Admin. Subpoena 25 1431 032 to Rhode Island Hosp.*, 2026 WL 1392565.

[17] The Government's papers refer to Children's National Hospital as Children's National Medical Center or CNMC. (ECF No. 21 at p. 1.)  CNH and CNMC refer to the same entity.

(ECF No. 1-1 ¶ 9.)

As part of the instant motion, Movants seek class treatment pursuant to Rule 23(b)(2) in their request that the court (i) quash the DOJ administrative subpoenas containing the Requests and served on doctors and clinics involved in performing transgender medical procedures on children, and (ii) preliminarily enjoin DOJ from, *inter alia*, "from seeking, demanding, receiving, or using patient-identifying information or patient medical records responsive to Requests 11–13 (or materially identical PHI requests, however captioned) in any proceeding or collection effort." (ECF Nos. 1-1, 1-19.)

In opposition to the Motion (ECF No. 15), the United States (the "Government") argues that Federal Rule of Civil Procedure 45 does not permit "classwide quashal" of administrative subpoenas, and the court can only award relief as to the parties before it.[18] (ECF No. 21 at pp. 6–12.) The Government challenges Movants' standing and asserts the DOJ administrative subpoenas are lawful. *Id.* at pp. 23–27.[19]

## II.    18 U.S.C. § 3486 & FEDERAL RULE OF CIVIL PROCEDURE 45

Pursuant to 18 U.S.C. § 3486(a), the Attorney General may issue and serve a subpoena requesting the production of records in an investigation of, *inter alia*, "a Federal health care offense," or "a Federal offense involving the sexual exploitation or abuse of children." 18 U.S.C. § 3486(a). "At any time before the return date specified in the summons, the person or entity summoned may, in the United States district court for the district in which that person or entity

---

[18] Because the court will deny as moot Movants' request for a preliminary injunction, it does not address the Government's remaining *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) factors and arguments in opposition to same.

[19] The Government advances these arguments in the context of Movants' likelihood of success on the merits and the requested preliminary injunctive relief. (ECF No. 21 at pp. 23–27.) Although the court will deny as moot the request for a preliminary injunction, the court will address the Government's arguments on likelihood of success to the extent they pertain to the merits of the core requested relief—quashal of subpoena Requests 11 through 13.

does business or resides, petition for an order modifying or setting aside the summons . . . ." *Id.* § 3486(a)(5).  Any such summons "shall not require the production of anything that would be protected from production under the standards applicable to a subpoena duces tecum issued by a court of the United States." *Id.* § 3486(a)(7).  As this court previously explained in a related case, § 3486 thus expressly incorporates the standards applicable to judicial subpoenas.

Federal Rule of Civil Procedure 45 provides in relevant part:

> (d) PROTECTING  A  PERSON  SUBJECT  TO  A  SUBPOENA; ENFORCEMENT.
>
> .              .              .
>
> (3) *Quashing or Modifying a Subpoena*
>
>> (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>>
>>> (i) fails to allow a reasonable time to comply;
>>>
>>> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>>> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>>>
>>> (iv) subjects a person to undue burden.

FED. R. CIV. P. 45(d)(3)(A)(iv).  And, per Federal Rule of Civil Procedure 81, the Federal Rules of Civil Procedure generally "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings."  FED. R. CIV. P. 81(a)(5).

## III.    REQUEST FOR CLASS CERTIFICATION

Movants ask this court to take unprecedented action and certify a class in a miscellaneous

action brought pursuant to 18 U.S.C. § 3486.  Movants contend, compellingly, that "[a]bsent class-wide protection, DOJ will continue extracting transgender minors' PHI hospital by hospital, faster than any individual can move to quash." (ECF No. 1-2 at p. 2.)  Movants, however, do not identify a single case or authority to support such action, but their general theory is as follows: DOJ issued a swath of § 3486(a) administrative subpoenas each of which includes the Requests at issue; Movants are entitled to seek to limit those subpoenas pursuant to § 3486(a), which incorporates Rule 45 judicial subpoena standards; through Rule 81, the Federal Rules of Civil Procedure apply to judicial proceedings regarding administrative subpoenas (like this one); therefore, Movants may invoke Rule 23 class certification to quash every (present and future) DOJ administrative subpoena containing the Requests.  Movants' arguments are well-taken, but the court is not persuaded that Rule 23 is available here.

Rule 81 does not, in this court's estimation, stand for the principle that every independent proceeding involving a subpoena has available to it the full panoply of the federal rules.  For instance, Federal Rule of Civil Procedure 3 provides that a civil action "is commenced by filing a complaint with the court"; that is plainly inapplicable to a statutory action initiated by a motion to quash a subpoena (or compel compliance), notwithstanding application of Rule 81.  The Rules are replete with other examples: aspects of Rule 4 on summons; Rules 7, 8, and 10 on pleadings; Rule 13 on counter- and crossclaims; and Rule 16 on scheduling orders, *see* FED. R. CIV. P. 4, 7, 8, 10, 13, 16, as well as seemingly most of the discovery rules, as discovery is not generally pursued in miscellaneous subpoena actions, *cf. E.E.O.C. v. K-Mart Corp.*, 694 F.2d 1055, 1067 (6th Cir. 1982) (noting courts' reluctance to grant discovery in subpoena enforcement actions by the U.S. Securities and Exchange Commission and finding no law that supported authority for district court to allow discovery from the U.S. Equal Employment Opportunity Commission); *Food Town*

10

*Stores, Inc. v. E.E.O.C.*, 708 F.2d 920, 925 (4th Cir. 1983) (citing positively the *K-Mart* holding that "discovery [in subpoena enforcement actions] is appropriate only where the private party makes a substantial showing of abuse of process"). What is apparent is that Rule 81 contemplates application of the relevant rules, depending on the nature of the proceeding, unless otherwise provided by statute. In other words, Rule 81 does not transform a miscellaneous action into something it is not—a civil action initiated by a pleading. The question then is whether Rule 23, and the class action vehicle, is applicable here. The court is not persuaded that it is.

As an initial matter, the plain language of § 3486 requires actions be brought in the United States district court "for the district in which that person or entity does business or resides," 18 U.S.C. § 3486(a)(5), and Rule 45 similarly limits the filing of motions to quash or modify to "the court for the district where compliance is required," FED. R. CIV. P. 45(d)(3)(A). These provisions, which require actions be brought where the recipient of the subpoena does business, resides, or is required to comply, do not support, as Movants here contend, that Rule 23 is an appropriate and applicable rule to the subpoena challenge at issue, and that this court may issue a nationwide quashal order via the class action vehicle.[20] To construe Rule 81 to permit a Rule 23 nationwide class on a miscellaneous motion to quash would neglect express § 3486 language, and therefore run afoul of Rule 81(a)(5)'s instruction that the rules are applicable "except as otherwise provided by statute."[21] *Cf. Bixby v. Stirling*, 90 F.4th 140, 147 n.5 (4th Cir.), *cert. denied,* 145 S. Ct. 224

---

[20] The court notes that Movants' counsel at the hearing disputed the characterization of the proposed class as a "nationwide class" because the class is drawn by the characteristics and legal questions at issue to the class as opposed to geographical parameters. The point remains, however, that Movants do seek to certify a class of nationwide proportion. Indeed, at a different time in the hearing, Movants' counsel referred to the DOJ administrative subpoenas as part of "a nationwide campaign to shut down pediatric transgender medical care" and remarked that DOJ had issued "20 plus subpoenas. . . to hospitals nationwide." Thus, whether on the basis of geography or the characteristics of the DOJ's investigatory administrative subpoena process, the requested class is nationwide in scope.

[21] At the hearing, Movants' counsel argued for approaching these procedural hurdles from the opposite end—that Rule 23 can apply to overcome the venue hurdle presented by § 3486. This approach, however, neglects Rule 81's instruction and would turn the inquiry on its head by starting with the federal procedure rule, as opposed to the statutory text that provides the basis for Movant's requested quashal relief.

(2024) (explaining that "statutes take priority over the federal rules" and quoting *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005), where the Court explained that, through Rule 81, the Federal Rules of Civil Procedure apply to statutory based proceedings, like 28 U.S.C. § 2254 habeas proceedings, but only to the extent the rules are not inconsistent with the operable statutory provisions).

More generally, the court is not persuaded that Rule 23 is applicable to § 3486(a)(5) motions to quash based on the language of the rule—it speaks of claims, defenses, and relief sought, in the vein of Rule 8 on pleadings. *See also* 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 1:2 (6th ed. 2025) ("A class action is a lawsuit in which a representative litigates the common claims of a class of individuals too numerous to join to the case individually."). Caselaw also reflects this. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (noting that putative class "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution");[22] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (noting that "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action") (citation omitted). It does not follow that, in a miscellaneous action initiated via motion and absent any pleading, *see* FED. R. CIV. P. 7, Rule 81 operates to convert it into one subject to class action treatment. *See Gen. Tel. Co. of Sw.*, 457 U.S. at 155 ("The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)).

In support of their argument, Movants rely upon caselaw where courts "confronting

---

[22] *Wal-Mart Stores* also serves to remind this court that "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (quoting Rules Enabling Act, 28 U.S.C. § 2072(b)).

uniform subpoenas have granted relief to all affected nonparties" and that "embraces the premise of class treatment." (ECF No. 1-2 at p. 19.)  Importantly, however, none of these cases addresses class certification.[23]

First, the Ninth Circuit in *Peters v. United States* quashed a subpoena upon holding that "8 U.S.C. § 1225(a) does not authorize the [Immigration and Naturalization Services ("INS")] to issue a group 'John Doe' subpoena."  853 F.2d 692, 694 (9th Cir. 1988).  The singular subpoena at issue directed the manager of a farm labor camp to appear before a criminal investigator "to give testimony in connection with 'a criminal investigation proceeding' relating to 'undocumented aliens residing at the [the labor camp] concerning their immigration status in the United States" and to provide related records.  *Id.*    The manager refused to comply on the basis of privacy concerns.  *Id.*  Following initiation of enforcement proceedings, the manager, joined by intervenor tenants, moved to quash the subpoena, "arguing that the subpoena was, *inter alia,* outside the INS's authority, overbroad, and contravened the [F]ourth [A]mendment."  *Id.*   The Ninth Circuit noted it had found "no reported decision in which the INS ha[d] attempted to issue a third-party group subpoena in connection with a general investigation of unnamed individuals on the suspicion that some of them may be undocumented aliens."[24]  *Id.* at 700.  It then quashed the subpoena.  *Id.*

Second, *In re Subpoena of Internet Subscribers of Cox Communications, LLC* concerns a

---

[23] Movants offer that they have not identified any decision holding Rule 23 unavailable in a proceeding to quash an administrative subpoena.  (ECF No. 1-2 at p. 19.)  But neither do they identify any opinion holding Rule 23 affirmatively available.  At the hearing, Movants referenced a civil class action initiated on May 27, 2026, in the Northern District of California, *Z.A., et al. v. Lucile Salter Packard Children's Hospital at Stanford*, 5:26-cv-04998-PCP, in which the California court appears to have granted in part the plaintiffs' *ex parte* motion for temporary restraining order.  (Dkt. 47.)  Unlike the instant matter, the plaintiffs in the California case filed a civil action that includes claims and related requested relief.  (Dkt. 41.)  Further, the proposed class in that action is limited to individuals who received care at a healthcare institution located in the State of California.  *Id.*  These characteristics are materially distinguishable from the circumstances present here.

[24] The use of "third-party group subpoena" and "John Doe subpoena" language utilized by the court in *Peters* appears to be in reference to the Immigration and Naturalization Service's "authority to issue the subpoena without identifying particular individuals under investigation."  *Peters v. United States*, 853 F.2d 692, 694 (9th Cir. 1988).

copyright holder's subpoena to an internet service provider to obtain the identities of 29 of its subscribers pursuant to 17 U.S.C. § 512(h), "a provision of the Digital Millennium Copyright Act (DMCA) that establishes an expedited subpoena process through which a copyright holder can obtain the identities of online infringers." 148 F.4th 1056, 1058 (9th Cir. 2025). One such subscriber filed an objection, which the magistrate judge construed as a motion to quash.

> Although not raised by John Doe or Capstone, the magistrate judge concluded that the subpoena was invalid because Cox's role in disseminating the copyrighted material was confined to providing the Internet connection, which qualified Cox for one of § 512's four primary safe harbors—§ 512(a). Relying on the text of the statute and case law from other circuits, the magistrate judge concluded that a § 512(a) service provider cannot be subject to a § 512(h) subpoena as a matter of law.

*Id.* at 1060. The district court adopted the magistrate judge's recommendation. *Id.* The Ninth Circuit held the statutory basis for issuance of the subpoena was flawed and concluded the district court had not abused its discretion by quashing it. *Id.* at 1069.

Finally, in *Virginia Department of Corrections v. Jordan*, 921 F.3d 180 (4th Cir. 2019), the plaintiffs served a third-party discovery subpoena in their civil action challenging Mississippi's lethal-injection procedures under the Eighth Amendment. *Id.* at 184. Following the parties' failure to reach a compromise on the scope of the subpoena, the third-party recipient moved to quash it. *Id.* at 184–85. Relevant to this court's purposes, in considering the respective burdens in conducting the proportionality analysis pursuant to Rule 26, the Fourth Circuit explained:

> On the burden side, district courts should of course consider the dollars-and-cents costs associated with a large and demanding document production. But there are other cognizable burdens as well. For example, a subpoena may impose a burden by invading privacy or confidentiality interests. *See Modern Plastics*, 890 F.3d at 251–52; *In re Missouri Dep't of Corr.*, 839 F.3d 732, 736–37 (8th Cir. 2016); *Fappiano v. City of New York*, 640 F. App'x 115, 121 (2d Cir. 2016). Courts may consider the interests of the recipient of the subpoena, as well as others who might be affected. The text of

14

> Rule 45 makes that clear, encompassing burdens on any "person," not just the recipient of the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(iv). For example, if a subpoena seeks information from a business about its customers, it may implicate the business's interest in protecting competitively sensitive information, as well as the customers' interest in protecting their privacy, *see Modern Plastics*, 890 F.3d at 251–52. Another type of burden arises when a subpoena is overbroad—that is, when it seeks information beyond what the requesting party reasonably requires. *See Wiwa*, 392 F.3d at 818. A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it.

*Id.* at 189–90 (footnotes omitted). It then concluded the district court had not abused its discretion when it quashed the subpoena based on the disproportionately minor demonstrated need for the requested documents as compared to the cognizable burdens on affected nonparties. *Id.* at 192.

None of these cases supports that the Rule 23 class vehicle is available to a movant in a miscellaneous motion to quash action. First, none of the cases has anything to do with class actions or the applicability of Rule 23 in a statutory administrative subpoena action. Second, each of the cited cases concerns only a single subpoena (apparently) issued in the relevant district—a far cry from the instant action where Movants request nationwide quashal of the Requests in more than 20 identified and unidentified administrative subpoenas. Third, the *Peters* and *Jordan* courts addressed motions to quash brought (at least in part) by the subpoena recipients, not affected third parties.[25]

The court appreciates the challenge the instant matter poses to both sides; it is hard to argue for or against something that has never happened (or, it seems, even been directly discussed). Based on the foregoing analysis, however, the court finds Movants have not demonstrated that Rule 23 is an applicable or available vehicle in the instant action. Movants chose to seek the

---

[25] The court addresses *infra* the *Cox Communications* quashal on objection by the John Doe subscriber as opposed to Cox Communications as the subpoena recipient.

protections made available through § 3486 and opted not to pursue a traditional civil action. The court makes no commentary on the wisdom of that election, but they cannot at once avail themselves of an action functionally exempt from the requirements of certain rules (*e.g.*, a complaint, issuance of summons, *etc.*) and urge that they may nonetheless avail themselves of any Federal Rule of Civil Procedure. (*See* ECF No. 18, in which Movants assert the court should not contend with answering the Government's request for clarification as to whether this action is or is not a Rule 3 civil action.) Movants' request for class treatment is simply an ill fit for the matter before the court and the relief they seek. The court will therefore deny the Motion to the extent it seeks class certification.[26]

Seemingly in the alternative to their request for class certification, Movants contend the court may quash the Requests without class certification because "[a] subpoena duces tecum 'remains at all times under the control and supervision of a court,' and courts possess inherent authority to quash or modify subpoenas that are unlawful, unreasonable, or unconstitutional, regardless of whether every affected individual is formally before the Court." (ECF No. 1-2 at p. 9 n.14, quoting *In re Grand Jury Subpoena*, 829 F.2d 1291, 1297 (4th Cir. 1987)). In part, the court agrees. The cases relied upon (and discussed above), while not particularly persuasive on class certification or nationwide quashal of unidentified subpoenas, do support that, where a movant has standing to challenge the subpoena, the quashal scope is not necessarily tied to the particular movant, but rather to the lawfulness of the challenged subpoena. *See, e.g.*, *In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC*, 148 F.4th at 1068–69 (affirming quashal

---

[26] In view of the court's ruling on the request for class certification, the court need not reach the Government's argument that affording relief to a conditional class runs afoul of *Trump v. CASA, Inc.,* 606 U.S. 831 (2025), by affording relief to parties not before the court under the theory that members of a conditionally certified class would not be bound by the court's rulings. (ECF No. 21 at pp. 19–11.) As mentioned above, however, Rule 23 no longer recognizes conditional class certification.

of subpoena as invalid following non-recipient's objection to the subpoena after the subpoena recipient otherwise substantially complied with the subpoena); *Peters v. United States*, 853 F.2d at 699 (quashing administrative subpoena on recipient's motion with non-party intervenors' joinder).

The remaining question then, before addressing whether to quash the subpoena Requests, is the appropriate scope of any quashal ordered here.  Movants ask the court to quash all Requests in the DOJ administrative subpoenas issued to children's hospitals, including those to CNH, Connecticut Children's Medical Center, Michigan Medicine, and California's Rady Children's Hospital.  On this point, Movants face another hurdle.  As discussed above, § 3486 requires that challenges be brought in the district in which the summoned person or entity does business or resides.  18 U.S.C. § 3486(a)(5).  Rule 45 provides authority for quashal by courts in the district where compliance in required.  FED. R. CIV. P. 45(d)(3)(A).  There is no dispute that CNH does business in this district (Maryland), but there is nothing before the court to support that this is a district where Connecticut Children's Medical Center, Michigan Medicine, and California's Rady Children's Hospital do business, are incorporated or headquartered, or are required to comply—or even that Movants who received care at these institutions themselves reside in Maryland.[27]  Indeed, at the hearing, on inquiry from the court, counsel for Movants  confirmed that CNH is the only subpoena recipient hospital with the requisite Maryland connection and where a Movant received care such that their records and personal information would be responsive to the Requests.  The statute dictates where challenges to administrative subpoenas must be made and does not on its face contemplate (or authorize) nationwide quashal as to any institution without the requisite tie to this district.

---

[27] The court makes no findings as to whether these factors would satisfy the statutory requirement; the court merely notes there is no clear tether between these Movants who did not receive care at CNH and this court.

Based on the foregoing, any order to quash the Requests will be limited to the administrative subpoena directed at CNH (the "CNH Subpoena"), as that is the sole subpoena before this court that, pursuant to § 3486, concerns an institution that does business in and has offices in Maryland.  Importantly, however, any order to quash by this court is properly applied to the CNH Subpoena Requests as a whole, and not limited solely to records pertaining to Movants.[28] *See In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC*, 148 F.4th at 1069 and *Peters*, 853 F.2d at 699, *supra*.

## IV.    REQUEST TO QUASH

### A.  Movants Have Standing.

In footnote 1 at page 6 of its Response in Opposition, the Government argues that Movants lack statutory standing to move to quash (or otherwise challenge) the CNH Subpoena because none of them was a recipient of the administrative subpoenas.  Section 3486 empowers the DOJ to issue administrative subpoenas to investigate federal healthcare offenses and provides as follows in relevant part: "At any time before the return date specified in the summons, the person or entity summoned may" move to quash or modify the subpoena.   18 U.S.C. § 3486(a)(5).

The Government erroneously reads into the statute a prohibition that does not exist, which is to say nothing in the language of the statute prohibits a non-recipient from moving to quash a § 3486 subpoena; further, the Government ignores subsection (a)(7), which expressly incorporates

---

[28] In its opinion in *In re Children's National Hospital*, No. 1:25-CV-03780-JRR, 2026 WL 160792 (D. Md. Jan. 21, 2026), the court quashed the subpoena Requests at issue as to the movants there and declined to quash the Requests as to persons not before the court.  The court explained: "Although the Subpoena is an overreach untethered to any lawful purpose no matter who seeks protection from the court, Movants have not persuaded the court that they have standing to raise the matter for persons not parties before the court." *Id.* at *9.  To be clear, the court did not find that the movants could not seek such relief, but instead declined to reach the issue where the movants made no argument as to scope.  That is certainly not the case here.

the standards applicable to judicial subpoenas.[29]  And that is important.

"Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena."  *U.S. v. Idema*, 118 F. App'x. 740, 744 (4th Cir. 2005).  Obviously, production by a hospital of one's private medical records containing highly sensitive treatment and care information rises to the level of potential undue burden as well as disclosure of protected materials contemplated by Rule 45; this appears particularly acute where the records to be disclosed are of a minor who relies on a parent or guardian to protect their interests because they lack capacity to act in self-protection.  *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180 (4th Cir. 2019); *c.f. Mezu v. Morgan State Univ.,* Civ. No. WMN-09-2855, 2011 WL 5110269, at *2 (D. Md. Oct. 25, 2011), *aff'd*, 495 F. App'x 286 (4th Cir. 2012) (describing as "questionable" whether a party may object to subpoena for third party's medical records, and citing *Idema, supra,* for applicable standard).  For the reasons set forth above, the court concludes that Movants meet the statutory/rule-based standard for entitlement to move to quash the CNH Subpoena.

So, too, is the court satisfied that Movants have Article III standing.  "The 'irreducible constitutional minimum of standing' requires a plaintiff to show (1) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury would likely be redressed by judicial relief."  *Fernandez v. RentGrow*, 116 F.4th 288, 294 (4th Cir. 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  First, the subpoena plainly threatens to cause immediate injury to Movants' default and concrete right to maintain the privacy of their medical records.

---

[29] "A summons issued under this section shall not require the production of anything that would be protected from production under the standards applicable to a subpoena duces tecum issued by a court of the United States."  18 U.S.C. § 3486(a)(7)

Second, were the hospital to comply with the CNH Subpoena, or were the Government to disclose or use those medical records for purposes of an investigation of purported FDCA violations by CNH, Movants' privacy interests would be directly and proximately injured; similarly, if the Government had not issued the CNH Subpoena, Movants would not face the imminent injury about which they complain. Third, Movants' complained-of injury to their right to privacy in their medical records is directly redressable by this action to quash the CNH Subpoena. Movants, therefore, have both statutory and Article III standing.

**B. The Motion Is Not Time-Barred.**

Also by way of footnote 1 to its Response in Opposition, the Government states: "[F]or those subpoenas in which the return date has already passed, any motion to quash is untimely." (ECF No. 21 at p. 6 n.1.) The Government acknowledges that this court rejected that argument in *In re Children's National Hospital*, No. 1:25-CV-03780-JRR, and in summary fashion restates its position as to untimeliness while that matter is on appeal to the Fourth Circuit. Similarly, the court here finds the Motion timely for the same reasons the motion in *In re Children's National Hospital* was timely. In that case and here, the Government asserts the Motion is untimely because 18 U.S.C. § 3486 authorizes the recipient of an administrative subpoena to move to quash (or modify) prior to the deadline for response, and the Motion was not filed prior to the CNH Subpoena response date.

As in *In re Children's National Hospital*, Movants were not the recipients of the CNH Subpoena and the Government identifies no basis on which to conclude Movants were notified (constructively or in fact) of the CNH Subpoena demanding disclosure of their medical records in advance of the response deadline. "The timeliness argument is disingenuous, given the patients' initial lack of awareness of, and uncertainty regarding, the subpoena." *In re 2025 UPMC*

20

*Subpoena*, 2:25-mc-01069-CB, 2025 WL 3724705, at *2 (W.D. Pa. Dec. 24, 2025); *see also In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 349 (W.D. Va. 1999) (holding that "failure to act timely will not bar consideration of [certain] objections" to subpoenas on grounds of facial overbreadth)*; Olszewski v. Bloomberg L.P.*, No. 96 Civ. 3393, 2000 WL 1843236, at *4 (S.D.N.Y. Dec. 13, 2000) (considering motion to quash outside of response date because movant was "entitled to protection from discovery of his confidential health . . . records"). The court declines to deny the Motion on grounds of untimeliness.

Having satisfied itself that the request for quashal is properly before the court, the court moves now to the substantive quashal grounds. For the reasons set forth below, this court joins the district courts around the country in finding that the Government's CNH Subpoena lacks a proper investigatory purpose under law; serves only to bolster the Executive's policy objective of terminating access to gender affirming healthcare for adolescents; and has no plausible or coherent tether to its stated purpose.

### C.  The CNH Subpoena Lacks a Proper Investigative Purpose.

The Government urges that its power under the Health Insurance Portability and Accountability Act ("HIPAA") to issue § 3486 administrative subpoenas renders the Motion a dead letter. As the court explained *In re Children's National Hospital,* although the Government's administrative subpoena power is broad, it is not without limit.

In 1950, the Supreme Court made clear that the judicial review hurdle of an administrative agency is not onerous; but neither is an agency's investigatory power boundless. "Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and

the information sought is reasonably relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable." *U.S. v. Morton Salt Co.,* 338 U.S. 632, 652–53 (1950) (citations omitted)

In 2000, in reviewing a district court's order on a motion to quash an administrative subpoena, the Fourth Circuit held;

> In short, an investigative subpoena, to be reasonable under the Fourth Amendment, must be (1) authorized for a legitimate governmental purpose; (2) limited in scope to reasonably relate to and further its purpose; (3) sufficiently specific so that a lack of specificity does not render compliance unreasonably burdensome; and (4) not overly broad for the purposes of the inquiry as to be oppressive, a requirement that may support a motion to quash a subpoena only if the movant has first sought reasonable conditions from the government to ameliorate the subpoena's breadth. But a subpoena need not be supported by probable cause . . . .

*In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000).

The Government fails to place before the court any information, record, or evidence supporting or pertaining to investigation of CNH for any "health care offense." There is no articulated basis to suspect CNH of violations of the FDCA or the False Claims Act;[30] and surely none that would call for disclosure of any Movant's records. The Government offers no affidavit (or complaint or whistleblower statement) attesting to grounds for an investigation of CNH for FDCA or False Claims Act violation.

Nothing in the Government's papers provides even a bare foundation on which to issue the CNH Subpoena requiring adolescent patient medical records. The Government sets forth no basis on which it suspects CNH of misbranding or distributing drugs, or any other conduct, as proscribed

---

[30] The Government mounts no argument that the Subpoena was issued in furtherance of an investigation of CNH for suspected violation of the False Claims Act, and instead limits its argument to DOJ's interest in purported violations of the FDCA. At page 2 of its Response in Opposition, the Government offers generally: "One focus of the Department's investigation is potential violations of the Food, Drug, and Cosmetic Act." Aside from the "one focus" mentioned at page 2, the Government offer no other focus generally or specifically as to CNH.

by the FDCA. The Government's statement as to how certain drugs are applied to patient care across the national healthcare spectrum (*see* ECF No. 21 at p. 2) is "too indefinite" to demand CNH produce the medical records described in the CNH Subpoena. *See Morton Salt Co.,* 338 U.S. at 652–53, *supra*. The Government seeks to investigate how CNH treats its patients; specifically, in the context of gender-affirming patient care. But the FDCA regulates commerce, not patient care. *In re Subpoena No. 25-1431-014*, Misc Action No. 25-39, 2025 WL 3252648, at *17 (E.D. Pa. Nov. 21, 2025).

The court concludes the CNH Subpoena was not issued for a legitimate governmental purpose, is not limited in scope to any legitimate purpose, and is oppressive in its breadth. *In re Subpoena Duces Tecum*, 228 F.3d at 349. Even crediting the Government's stated FDCA investigatory purpose, such a purpose is at odds with the CNH Subpoena. If the Government is pursuing FDCA violations, it is utterly unclear to this court why the Government demands production of adolescent patient records, including patient names, dates of birth, social security numbers, parent information, clinical indications, diagnoses, and parent authorization forms.[31] Nothing the Government submits plausibly explains the purported connection between the documents it demands and suspected FDCA violations by CNH. Considering the patent disassociation of the scope of the CNH Subpoena from purported investigation of supposed FDCA violations—against the backdrop of Executive Order 14187, the April 2025 DOJ memorandum, and the June 2025 DOJ memorandum—the court finds the CNH Subpoena is a pretext to fulfill

---

[31] Because the scope and breadth of the CNH Subpoena is so mismatched with the Government's articulated purpose, the court strains to imagine how Movants might have comported with the Fourth Circuit's admonition that an overbreadth challenge may be brought "only if the movant has first sought reasonable conditions from the government to ameliorate the subpoena's breadth." *In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000). In other words, even if the CNH Subpoena sought only adolescent patient names and social security numbers, or was limited to patient "diagnoses" and physician "assessments," the court strains to see how such a limitation would bring the Subpoena into an appropriate purpose or constitutional scope to investigate potential FDCA violations by CNH.

the Executive's well-publicized policy objective to terminate and block gender affirming healthcare.

### D. Movants Have a Constitutional Right to Expect Privacy of the Medical Records.

There can be no question that Movants have a constitutionally reasonable expectation of privacy in the highly sensitive medical records subject to the CNH Subpoena. *Doe v. Broderick*, 225 F.3d 440, 451 (4th Cir. 2000). In view of the court's determination that the Government lacks a proper investigative purpose, and, specifically, that the CNH Subpoena demands production of information disconnected from a proper § 3486 subpoena related to investigation of suspected FDCA violations by CNH, Movants' interest in maintaining the privacy of their sensitive medical records outweighs any interest of the Government in calling for their production. No proper (never mind compelling) governmental purpose has been demonstrated. *Payne v. Taslimi*, 998 F.3d 648 (4th Cir. 2021).

## V.    CONCLUSION[32]

The Government has made improper use of a § 3486 administrative subpoena to out Movants for receiving, and CNH for providing, healthcare the Executive characterizes as a "stain

---

[32] Although the Government does not raise a sovereign immunity defense here, it has done so in other similar actions. *See, e.g.., In re Children's Nat'l Hosp.,* No. 1:25-CV03780-JRR. Further, although the defense of sovereign immunity is waivable, it is also a jurisdictional matter. Therefore, in the exercise of caution, the court addresses it briefly here to the extent the matter is pertinent to the appellate process. Because Movants seek only equitable relief from Government agency action, this action is covered by the Administrative Procedure Act's ("APA") waiver of sovereign immunity for suit brought by an individual "suffering legal wrong because of agency action" where the requested relief is "other than money damages." 5 U.S.C. § 702, *Amador v. Mnuchin,* 476 F. Supp. 3d 125, 142 (D. Md. 2020) (citing collection of cases set forth in *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 775 (7th Cir. 2011)). Importantly, the APA authorizes judicial review of agency action only if "there is no other adequate remedy in a court." 5 U.S.C. § 704; *Amador*, 476 F. Supp. 3d at 142 (citing *U.S. Army Corps. of Eng'rs v. Hawkes Co.*, 578 U.S. 590 (2016), and *Bowen v. Massachusetts*, 487 U.S. 879 (1988)). Section 704 embodies the congressional limit on judicial review of agency action such that "the general grant of review in the APA" should not "duplicate existing procedures for review of agency action" or "'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *Bowen*, 487 U.S. at 903 (citation omitted). The court is unaware of any other means by which Movants could move to quash or otherwise challenge the CNH Subpoena Requests, and, as said, the Government has not mounted such a defense.

on our Nation's history." The CNH Subpoena bears no credible connection to an investigation of any statutory violation by CNH. Rather, the CNH Subpoena appears to have no purpose other than to intimidate and harass Movants and those similarly situated. The Government seeks to fulfill its policy agenda through compliance born of fear. Moreover, in the view of the court, the CNH Subpoena is the classic impermissible fishing expedition.

At the hearing, on inquiry of the court, the Government asserted, as it has in other cases like this one, that anonymizing responsive CNH patient records cures the Subpoena's defects (should the court discern any) and explained, "that's a condition [of production] we could live with." The court rejects that proposal. The CNH Subpoena lacks a legitimate purpose. That cannot be ameliorated by providing patient records in redacted form.[33]

For the reasons set forth herein, the Motion is **GRANTED IN PART AND DENIED IN PART**. A separate order follows.

/S/

_____
Julie R. Rubin
United States District Judge

June 9, 2026

---

[33] Earlier during the hearing, the Government also took the seemingly contrary position that it required patients' identifications so that it could identify CNH patients who may wish to voluntarily comply with the CNH Subpoena Requests in the event of quashal.